IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JENNIE COURTNEY, ETC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No.: 2:06-CV-00600-MHT |
| | ) |
| ANTHONY CLARK, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS COVINGTON COUNTY SHERIFF ANTHONY CLARK AND COVINGTON COUNTY DEPUTIES JERRY EDGAR AND WALTER INABINETT'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS**

COME NOW Covington County Sheriff Anthony Clark, Covington County Deputy Sheriff Jerry Wayne Edgar, and Covington County Deputy Sheriff Walter Inabinett, Defendants in the above-entitled action, and file this Reply to the Plaintiff's Opposition to their Motion to Dismiss.

**INTRODUCTION**

In her Opposition, the Plaintiff apparently concedes that her official capacity claims are due to be dismissed. (Compare Doc. 68 at pp. 3-4, 7 with Doc. 71 generally). Accordingly, the claims are due to be dismissed. The Plaintiff does, however, insist upon the validity of her individual capacity federal Fourteenth Amendment and state law negligence/wantonness claims. She argues that the conduct alleged in the Complaint should "shock the conscience" of the Court. (Doc. 71 at pp. 3-5.) With respect to her state law claims, the Plaintiff contends that these Defendants are not entitled to absolute immunity on the grounds of case law wholly inapplicable to executive branch constitutional officers like these Defendants. Id. at pp. 7-9.

The Plaintiff's arguments do not save her claims. For the reasons set forth below and in these Defendants' principal brief, Sheriff Clark, Deputy Edgar, and Deputy Inabinett are entitled

1

to a dismissal of all of the Plaintiff's claims against them as a matter of law.

## ARGUMENT

The arguments in the Plaintiff's Opposition do not justify denying these Defendants their entitlement to absolute and qualified immunity. As a preliminary matter, the Plaintiff's Opposition is based in part on "facts" and inferences that are not in the record at the 12(b)(6) stage because they have not been pled in the Complaint. Sheriff Clark, Deputy Edgar, and Deputy Inabinett are entitled to qualified immunity on the Plaintiff's substantive due process claims because the conduct alleged in the Complaint does not, as a matter of law, rise to the level of "shock[ing] the conscience" as a matter of law. Additionally, the Plaintiff's substantive due process claim fails because no clearly established law – including the case law cited by the Plaintiff – gave these Defendants "fair warning" that their conduct was unlawful. Finally, the case law cited by the Plaintiff to save her state law claims applies only to state agents and not state constitutional officers (like sheriffs and their deputies).

**I.    THE PLAINTIFF'S OPPOSITION TAKES IMPROPER LIBERTIES WITH THE COMPLAINT'S FACTUAL ALLEGATIONS.**

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint. Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984). The scope of the review must be limited to the four corners of the complaint. Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000). In her Opposition, the Plaintiff has gone outside of the four corners of her Complaint to argue facts that are not properly in the record at this stage of the litigation and attempts to get the Court to draw an improper inference from the allegations that are contained in the Complaint.

First, the Plaintiff asserts that when Defendant Doster escaped from the Covington County Jail in 2002, he was involved in the murder of Paul LeMaster. (Doc. 71 at p. 1) In support of this allegation, the Plaintiff cites to something outside of the Complaint. Id. (citing

2

"Covington county circuit Court CC-2003-162, convicted on September 1, 2006"). As this fact has not been pled in the Complaint and the citation is to something outside of the record, the Court should not consider this "fact" for purposes of the pending 12(b)(6) motion. Grossman, 225 F.3d at 1231.

Similarly, the Plaintiff states in her Opposition that when Doster was recaptured after his first escape, he was placed back in the same cell from which he escaped two and one-half years later. (Doc. 71 at p. 1.) In support of this "fact" the Plaintiff cites to paragraph 20 of her Second Amended Complaint. Id. Paragraph 20, however, says absolutely nothing about Doster being placed back in the same cell. (Doc. 46 at ¶ 20.) All paragraph 20 avers is that "Sheriff Anthony Clark and his staff failed to keep a proper lookout and/or properly monitor and supervise the activities of Oscar Roy Doster and other inmates." Id. There are no allegations whatsoever with respect to the cell that Doster was placed in prior to either escape. (See generally Doc. 46.)

Second, and more egregiously, the Plaintiff disingenuously attempts to draw this Court into an improper inference by advancing the timing of one of her scurrilous allegations nearly two and one-half years into the future. In the Second Amended Complaint, the Plaintiff avers that "***when the first escape occurred in 2002***, Sheriff Anthony Clark and his staff willfully and intentionally suppressed the information of the escape . . . until after the regularly scheduled election in November 2002 . . ." (Doc. 46 at ¶ 21 (emphasis added).)[1] As alleged, the Plaintiff's decedent was killed *after* Defendant Doster was recaptured and escaped again ***nearly two and one-half years later***. (Compare Doc. 46 at ¶ 16 with Doc. 46 at ¶ 21.) Nonetheless, the Plaintiff cites this alleged failure to notify as support for her Fourteenth Amendment substantive due process claim.

---

[1] Sheriff Clark vehemently denies the defamatory and baseless allegations contained in paragraph 21. In the unlikely event that he remains a Defendant in this case, paragraph 21 will be the subject of a motion to strike at a later date.

3

The Court should see through the Plaintiff's subterfuge and utterly disregard this particular "fact". Assuming, *arguendo*, that Sheriff Clark did not notify the public until three days after Doster's *first* escape as alleged in the Complaint, there is no allegation in the Complaint that Sheriff Clark, Deputy Edgar, or Deputy Inabinett failed to notify the public after Doster's *second* escape two and one-half years later (the escape during which the Plaintiff alleges that her decedent was killed). The Plaintiff cannot make such an allegation even if she were allowed to amend her Complaint without risking Rule 11 sanctions, as such an allegation would be clearly untrue.[2]

II. **SHERIFF CLARK, DEPUTY EDGAR, AND DEPUTY INABINETT ARE ENTITLED TO QUALIFIED IMMUNITY ON THE PLAINTIFF'S FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS CLAIM.**

The parties appear to be in agreement on the nature of qualified immunity. Qualified immunity protects government officials acting within their discretionary authority provided that they do not violate clearly established federal or statutory law. (Doc. 71 at p. 4 citing Lassiter v. Alabama A&M Univ., 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc).) Once a governmental official establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to demonstrate in order (1) that the defendant violated a federally protected right; and (2) the federally protected right was so clearly established at the time that the defendant had "fair warning" that his conduct was unlawful. Saucier v. Katz, 533 U.S. 194, 201 (2001); Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In the case at bar, the Plaintiff cannot meet either of her burdens under the qualified immunity analysis.[3] The relevant conduct alleged in the Plaintiff's Second Amended Complaint cannot, as a matter of law "shock the conscience" of the Court in light of long established United States Supreme

---

[2] Furthermore, once again assuming the truth of this allegation, the Plaintiff would have standing and statute of limitations problems with making any claim based upon it.
[3] The Plaintiff's Opposition contains no challenge whatsoever to these Defendants showing that they acted within their discretionary authority. (See generally Doc. 71.)

Court and Eleventh Circuit Precedent. Additionally, the only case cited by the Plaintiff, Alabama Dep't of Corrections v. Thompson, 855 So. 2d 1016 (Ala. 2003) cannot clearly establish the law as it did not involve any federal claim whatsoever, let alone a Fourteenth Amendment substantive due process claim.

### A. Sheriff Clark, Deputy Edgar, and Deputy Inabinett Did Not Violate Dennis Courtney's Substantive Due Process Rights.

The Plaintiff's sole claim against these Defendants is a Fourteenth Amendment substantive due process claim. In sum, the factual allegations of the Second Amended Complaint that the Plaintiff contends support her substantive due process claim is that these Defendants negligently or wantonly allowed Oscar Doster and Darren Harnage to escape from the Covington County, Alabama Jail, and that these two men were "implicated" in the death of Dennis Courtney at his home in Oakwood, Texas. (Doc. 46, ¶¶ 14-17.)[4] These facts, even if accepted as true, do not establish a violation of Dennis Courtney's substantive rights as a matter of law.

The Fourteenth Amendment's due process clause was intended to prevent the government "from *abusing* [its] power, or *employing* it as an instrument of oppression." Davidson v. Cannon, 474 U.S. 344, 348 (1986) (emphasis added). The Due Process Clause prevents the government from engaging in an "*affirmative* abuse of power." DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 196 (1989) (quoting Parratt v. Taylor, 451 U.S. 527, 549 (1981) (Powell, J., concurring in result) (emphasis added)). The guarantee of substantive due process has historically "been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." Collins v. City of Harker Heights, 503 U.S. 115, 127 n.10 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986) (emphasis in the original).) The Due Process Clause, therefore, protects the people from affirmative actions of the State.

---

[4] As demonstrated previously – and it bears repeating – the Plaintiff's allegation of a failure to warn after Doster escaped allegedly occurred the *first* time he escaped.

A careful review of the Second Amended Complaint reveals that these Defendants are not accused of taking any affirmative acts to deprive Dennis Courtney of any right to which he was entitled. The Second Amended Complaint alleges that Sheriff Clark and his staff "allowed" Doster and Harnage to escape. (Doc. 46 at ¶¶ 16, 17, 19.) Sheriff Clark and his staff are alleged to have been negligent in failing to "keep a proper lookout and/or monitor and supervise the activities" of Doster and Harnage. Id. at ¶ 20. With respect to Deputy Edgar and Deputy Inabinett, there are no specific factual allegations against them at all in the Second Amended Complaint's statement of facts. Id. at ¶¶ 13-23. The only "intentional" act alleged in the Second Amended Complaint is the Plaintiff's frivolous claim that Sheriff Clark did not notify the public of Doster's 2002 escape until after the 2002 election. Id. at ¶ 21. There is absolutely no allegation whatsoever of any "*affirmative* abuse of power" anywhere in the Second Amended Complaint. Even the irrelevant and defamatory allegation regarding the notification of the first escape can only be characterized as an omission.

Furthermore, the Due Process Clause does *not* ensure that the State protects the people from each other. DeShaney, 489 U.S. at 196-97 (stating "[a]s a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.") There are, to be sure, certain exceptions to the general rule that the Court has described "special relationships" where the government does incur the burden of protecting an individual against private violence. DeShaney, 489 U.S. at 198-99 (discussing cases where the government restricts a citizen's ability to provide for or defend himself, i.e., where the citizen is an inmate or involuntarily committed to a mental health institution).[5] The duty arises from the limitations the government imposes on the individual. Id. at 200. However, there can be no "special relationship" where, as here, the government has imposed no restrictions on the citizen or impeded his ability to act in his own interests. Lovins v. Lee, 53 F.3d 1208, 1210 (11th Cir. 1995).

---

[5] See Estelle v. Gamble, 429 U.S. 97 (1976); Youngberg v. Romeo, 457 U.S. 307 (1982).

The Eleventh Circuit's decision in <u>Lovins</u> is squarely on point and dispositive of the instant case. It should not be lost on the Court that the Plaintiff has failed for a second time to address Lovins' clear applicability to the case at bar. (<u>See</u> <u>generally</u> Docs. 30 and 71.) In <u>Lovins</u>, the plaintiff was kidnapped, robbed, raped, and sodomized by an inmate who had been released by the defendant jail officials. 53 F.3d at 1209. The inmate was being held on a "peeping tom" offense and violation of his probation for his previous convictions of theft, robbery, kidnapping, and rape. <u>Id.</u> Nonetheless, the inmate was made a jail trusty and was given several weekend passes. <u>Id.</u> Finally, he was given a one-week "emergency" pass during which time he committed the above-referenced crimes against the plaintiff. <u>Id.</u> The Eleventh Circuit assumed for purposes of appeal that as a matter of state law, the inmate was not eligible to be a trusty and his release was illegal. <u>Id.</u> Nonetheless, the Eleventh Circuit held that "[b]inding precedent requires us to hold that ***there is no general substantive due process right to be protected against the release of criminals from confinement, even if that release violates state law***." <u>Id.</u> (emphasis added).

The plaintiff in <u>Lovins</u> attempted in vain to avoid the clear implications of <u>DeShaney</u>. First, she argued that her case fit into the "special relationship" exception. 55 F.3d at 1210. The Eleventh Circuit held that the exception was limited to circumstances where there is "a special relationship between the government and the victim of violence or mistreatment, a circumstance . . . lacking in [the plaintiff's] case." <u>Id.</u> The Court noted that the government defendants had not imposed any restrictions on the plaintiff to act in her own behalf, so there could be no special relationship. <u>Id.</u> The plaintiff "was in all respects a member of the general citizenry" for whom no special relationship could exist. <u>Id.</u>

The plaintiff next argued that the state statutes restricting the release of prisoners entitled her something under state law that was protected by the Due Process Clause. <u>Lovins</u>, 55 F.3d at 1210. The Eleventh Circuit easily disposed of this argument as well by citing to two cases, one from the

7

Supreme Court and the other from the Eleventh Circuit. Id. at 1210-11 (discussing Collins v. City of Harker Heights, 503 U.S. 115 (1992) and Jones v. Phyfer, 761 F.2d 642 (11th Cir. 1985)). The Eleventh Circuit noted that the Supreme Court's Collins decision explicitly held that a violation of state law cannot give rise to a substantive due process claim. Lovins, 55 F.3d at 1210-11.

Like Lovins, the Eleventh Circuit's decision in Jones is instructive on the claims before this Court and was found by the Lovins court to dispose of the plaintiff's second attempt at avoiding DeShaney. Also like Lovins, the Plaintiff has failed to address Jones in her opposition. In Jones, the plaintiff's deceased was an elderly woman who was an elderly woman who was raped in her home by a juvenile delinquent who was being held by the Alabama Department of Youth Services for ***breaking into the same woman's home six months earlier***. 761 F.2d at 643. As in Lovins, the plaintiff in Jones also contended that the delinquent's release on a Christmas furlough was a violation of state law. Id. at 647. Nevertheless, the Eleventh Circuit held in Jones that "[t]he fact that defendants may have violated the duties set out by state law for employees of the Department of Youth Services does not mean that the defendants deprived the plaintiff of her liberty rights without due process of law." Id. Even if the Jones plaintiff had a state tort claim, such a claim was insufficient to give her a valid constitutional claim. Id.

Assuming, *arguendo*, the truth of the allegations in the instant Plaintiff's Second Amended Complaint, the Lovins and Jones decisions make it abundantly clear that these Defendants did not violate Dennis Courtney's substantive due process rights. Even if these Defendants negligently and/or wantonly "allowed" Doster and Harnage to escape, there is no due process violation. As in Lovins, the Plaintiff's decedent "was in all respects a member of the general citizenry" with whom the Defendants had no special relationship. 55 F.3d at 1210. In fact, as noted in these Defendants' principal brief, Mr. Courtney was even further away from being in such a relationship because he was neither a citizen of Covington County, Alabama nor physically located within its territorial borders at

8

the time he was allegedly killed by Doster and Harnage.  Consequently, Mr. Courtney was not even a member of the "general citizenry" of Covington County or the State of Alabama – the people to whom these men owed their law enforcement duty.  See ALA. CODE § 36-22-3(4) (stating that sheriffs have the duty "*in their respective counties*, by themselves or deputies, to ferret out crime, to apprehend and arrest criminals and, insofar as within their power, to secure evidence of crimes *in their counties* . . .") (emphasis added).

In response to this argument, the Plaintiff quoted 42 U.S.C § 1983's prohibition against depriving "any citizen" of the United States of his federally protected rights while acting under color of law.  (Doc. 71 at p. 5.)   The Plaintiff's counterargument puts the procedural cart before the substantive horse.  Section 1983 is not a source of substantive rights but rather a procedure by which a plaintiff may vindicate his federally protected rights.  Almand v. DeKalb County, 103 F.3d 1510, 1512 (11th Cir. 1997).  It therefore cannot serve as a source of any "duty" owed by these Defendants to Mr. Courtney.  There must be an underlying substantive deprivation before the Plaintiff may use § 1983 to obtain a remedy for the alleged violation.  Baker v. McCollan, 443 U.S. 137, 145-46 (1979).  As set forth in the principal brief and reiterated above, the fact that Mr. Courtney was neither an Alabama citizen *nor physically located in Alabama* removes him from the sphere of persons in the "general citizenry" to whom an Alabama sheriff or sheriff's deputy owes any duty under the circumstances alleged in the Complaint.  ALA. CODE § 36-22-3(4).  Consequently, these Defendants could not have "deprived" Mr. Courtney of any federally protected right, thereby undercutting the Plaintiff's § 1983 argument.  ALA. CODE § 36-22-3(4); Lovins, 53 F.3d at 1210.

There is also no allegation that there was any kind of relationship between these Defendants and Mr. Courtney (again because he was not a citizen of, or located in, Covington County specifically or Alabama generally) or Doster/Harnage and Mr. Courtney.  Even if the Plaintiff could adduce some

9

kind of evidence establishing both a link between the alleged killers and Mr. Courtney *and* that these Defendants were aware of the link, <u>Jones</u> forecloses any possibility of a viable substantive due process claim based upon that factual scenario. 761 F.2d at 647. Furthermore, even if the Plaintiff could somehow prove that these Defendants violated Alabama law in "allowing" Doster and Harnage to escape, a violation of state law is insufficient to establish a substantive due process claim. <u>Collins</u>, 503 U.S. at 127-30; <u>Lovins</u>, 53 F.3d at 1211.

Accordingly, as a matter of clear, unambiguous, and most of all mandatory authority, the Plaintiff's Second Amended Complaint does not and cannot properly set forth a Fourteenth Amendment substantive due process violation against Sheriff Clark, Deputy Edgar, or Deputy Inabinett. Therefore, the Plaintiff cannot meet her burden of establishing a violation of her deceased's federally protected rights. <u>Saucier</u>, 533 U.S. at 201. Sheriff Clark, Deputy Edgar, and Deputy Inabinett are therefore entitled to qualified immunity and a dismissal of the Plaintiff's federal individual capacity claims against them. <u>Id.</u>

      **B.**    **No Clearly Established Law Provided These Defendants With Fair Warning That Their Conduct was Unlawful.**

The Plaintiff has again cited <u>Alabama Department of Corrections v. Thompson</u>, 855 So. 2d 1016, 1017 (Ala. 2003) as the clearly established law in this case. (Doc. 71 at p. 6.) <u>Thompson</u> is not relevant to this case, and it cannot clearly establish the law in light of <u>DeShaney</u>, <u>Collins</u>, <u>Lovins</u>, and <u>Jones</u>. Decisions from a state's highest court can clearly establish the law. <u>Jenkins v. Talladega Bd. of Educ.</u>, 115 F.3d 821, 827 (11th Cir. 1997) (en banc) However, *a fortiori*, such a decision needs to be on point. <u>Thompson</u> is not on point and therefore cannot clearly establish the law relevant to this case.

Even the most cursory examination of <u>Thompson</u> reveals that it has absolutely nothing to do with the Fourteenth Amendment to the United States Constitution generally, or subsantive due process claims generally. ***The only claims in <u>Thompson</u> were state law negligence and***

10

*wantonness claims*. 855 So. 2d at 1017. The plaintiff did not bring a Fourteenth Amendment claim of any kind. Consequently, even though Thompson discusses the concept of "special relationships" under *state law*, it is silent as to special relationships under federal Fourteenth Amendment jurisprudence. At best, all that can be said for Thompson is that it establishes a *state* tort that falls far short of establishing a Fourtenth Amendment substantive due process right. DeShaney, 489 U.S. at 203. They are not, as the Plaintiff argues, analogues. Consequently, Thompson could not have provided these Defendants with any kind of "fair warning" as to their Fourteenth Amendment substantive due process responsibilities.[6]

Moreover, when juxtaposed with decisions like Lovins and Jones, both of which dealt with materially similar facts and the same claims brought by the instant Plaintiff, it is clear that Thompson could not have provided fair warning to these Defendants. Each of the aforementioned Eleventh Circuit decisions, particularly when combined with the United States Supreme Court's DeShaney and Collins decisions, clearly establish that the alleged actions of these Defendants did not violate Dennis Courtney's federally protected rights. Consequently, even if the Plaintiff were able to meet her burden of proving a constitutional violation, she would still not be able to show the requisite "fair warning". These Defendants are therefore entitled to qualified immunity and a dismissal of the Plaintiff's federal individual capacity claims as a matter of law.

### III. SHERIFF CLARK, DEPUTY EDGAR, AND DEPUTY INABINETT ARE ENTITLED TO ABSOLUTE IMMUNITY ON THE PLAINTIFF'S STATE LAW CLAIMS.

Under long established Alabama law, Sheriff Clark and his deputies are executive branch constitutional officers of the State of Alabama. Article V, § 112 of the Alabama Constitution of

---

[6] Ironically, the Alabama Supreme Court *reversed* the trial court's refusal to grant summary judgment to the defendant guards and warden in Thompson, finding that there was no special relationship between them and the escaped inmate. 855 So. 2d at 1025-26.

1901. Article I, § 14 of the Alabama Constitution of 1901 creates a nearly impregnable immunity to civil suits for the State and its agencies. Patterson v. Gladwin Corp., 835 So. 2d 137, 142 (Ala. 2002). As stated by both the Alabama Supreme Court and the Eleventh Circuit, suits for money against Alabama sheriffs and their deputies for actions/ommisions occuring with the scope of their duties are suits against the state and prohibited by Article I, § 14. See, e.g., Parker v. Amerson, 519 So. 2d 442, 442-43 (Ala. 1987); Tinney v. Shores, 77 F.3d 378, 383 (11th Cir. 1996) (reversing district court's failure to grant absolute immunity to sheriff and deputy and holding "the *only* exceptions to a sheriff's immunity from suit are actions brought to enjoin the sheriff's conduct.") (emphasis in the original).

In her Opposition, the Plaintiff relied on Ex parte Cranman, 792 So. 2d 392 (Ala. 2000), and DeStafney v. University of Alabama, 413 So. 2d 391 (Ala. 1981). (Doc. 71 at pp. 7-9.) These two cases have nothing to do with the absolute immunity afforded to Alabama sheriffs and their deputies. The clarity of this point becomes apparent upon consideration of (1) the facts of the cases cited by the Plaintiff; (2) the language contained in Cranman itself; and (3) recent decisions of the Alabama Supreme Court.

      A.      **The Cranman Decision States That Its Exceptions Are Not Applicable to Sheriffs and Deputies.**

The conclusion that Cranman is not applicable to sheriffs and their deputies comes not just from the facts of the case, but also from the decision itself. In Cranman, the Alabama Supreme Court made it crystal clear that they were not making new law for Alabama sheriffs and deputies. Specifically, the Court stated, "[w]e do not deal here with the absolute immunity of witnesses, judges, prosecutors, and legislators, ***nor do we overrule Ex parte Purvis, 689 So. 2d 794 (Ala. 1996)***." 792 So. 2d at 396 n. 2. In so stating, the Alabama Supreme Court exempted from its new state-agent immunity analysis a specific group of state officers that included judges,

prosecutors, legislators, and (by invoking Purvis) sheriffs and their deputies. Accordingly, the exceptions to sovereign immunity found in Cranman do not apply to these Defendants.

### B. The Alabama Supreme Court Has Recently Reiterated That Cranman Does Not Apply to these Defendants.

Three recent Alabama Supreme Court cases make it abundantly clear that Cranman does not apply to Alabama sheriffs and their deputies. In the first case, Ex parte Haralson, a Lowndes County deputy sheriff was involved in an automobile accident in Montgomery County. 853 So. 2d 928 (Ala. 2003). The second decision involved an Alabama deputy who was sued for money damages following an automobile accident. Ex parte Blankenship, 893 So. 2d 303, 305 (Ala. 2004). Finally, and most recently, the Alabama Supreme Court reversed a trial court's failure to grant immunity to a deputy sued for a variety of state law claims including false imprisonment, assault and battery, the tort of outrage, wantonness, negligence, trespass, and conversion. Ex parte Davis, 930 So. 2d 497 (Ala. 2005).

Turning first to Haralson, the Alabama Supreme Court also underscored its statement in Cranman that the Cranman exceptions do *not* apply to deputy sheriffs:

> *In Cranman, although we restated the rule governing State-agent immunity, we did not address the State immunity afforded to sheriffs and deputy sheriffs for actions taken while working in the line and scope of their employment*, and we did not overrule Ex parte Purvis, 689 So. 2d 794 (Ala. 1996). 792 So. 2d at 396 n. 2. See also Ex parte Butts, 775 So. 2d 173 (Ala. 2000), in which a majority of this Court adopted the Cranman restatement of the rule governing State-agent immunity."

Haralson, 853 So. 2d 930 at n.1 (emphasis added). The Alabama Supreme Court made it abundantly clear that Cranman is not applicable to sheriffs and deputies. To the contrary, the Parker and Purvis line of cases contains the proper standard for a trial court to use in determining whether a sheriff or deputy is entitled to immunity. Haralson, 853 So. 2d at 931-33.

In Blankenship, a deputy sheriff was alleged to have caused a motor vehicle accident that took the life of the plaintiff's deceased. 893 So. 2d at 305. The complaint further alleged that

13

Deputy Blankenship was "performing his duties as a deputy sheriff . . ." Id. The Plaintiff's claims included negligence and wantonness. Id. Reversing the trial court's refusal to grant the deputy absolute immunity under Article I, § 14, the Alabama Supreme Court relied upon Parker and not Cranman. Id. at 305.

In Davis, the Conecuh County Circuit Court refused to grant a Conecuh County deputy's motion to dismiss state law money damages claims. 930 So. 2d at 499. The plaintiff's claims against the deputy included false imprisonment, assault and battery, outrage, wantonness, negligence, trespass, and conversion. Id. Granting the deputy's petition for a writ of mandamus and instructing the circuit court to grant the motion to dismiss, the Alabama Supreme Court held that "an action against a sheriff – or a deputy sheriff – for damages arising out of the performance of his duties is essentially a suit against the state" and thereby barred under Article I, § 14 of the Alabama Constitution of 1901. Id. at 501-502 (internal quotations and citations omitted). Responding specifically to the argument raised by the Plaintiff in the instant case, the Alabama Supreme Court stated:

> Cain argues that his claims fall within an exception to State immunity because the facts alleged in his complaint show that Deputy Davis's actions were beyond Davis's legal authority. See Ex parte Cranman, 792 So. 2d 392, 405 (Ala. 2000) ("a state agent *shall not* be immune from civil liability in his or her personal capacity . . . when the State agent acts . . . beyond his or her authority"). Deputy Davis's immunity, however, ***is derived from the performance of his responsibilities as an adjunct to a constitutional officer of this State. Thus, State-agent immunity and its exceptions are not applicable***. See Ex parte Purvis, 689 So. 2d 794, 795-96 (Ala. 1997) (refusing to apply the exceptions of State-agent immunity to claims made against a constitutional officer).

Id. at 501 n.6 (italicized emphasis in the original, bold and italicized emphasis added).

It is therefore inescapable that the Cranman line of cases is inapplicable to Sheriff Clark, Deputy Edgar, and Deputy Inabinett. To the contrary, as the foregoing sets forth in detail, Alabama sheriffs and their deputies are absolutely immune to money damages claims arising out

14

of the performance of their duties. As the Plaintiff's state law claims in this case are based upon the actions/omissions of these Defendants in carrying out their duties as a sheriff or deputy, they are due to be dismissed.

  C. **The Facts of the <u>DeStafney</u> Line of Cases Clearly Distinguish Them From the Case at Bar.**

<u>DeStafney</u> was decided nearly six years before <u>Parker</u>. The exceptions in <u>DeStafney</u> are much broader than those in <u>Parker</u> and cover state agents as opposed to constitutional officers. An examination of the facts in these cases demonstrates that they are inapplicable to Alabama sheriffs or their deputies.

Turning first to <u>DeStafney</u>, the parents of a child injured on a piece of playground equipment belonging to a day care facility operated by the University of Alabama sued the university, its president, and a day care worker employed by the university. 413 So. 2d at 392. The trial court granted summary judgment to all three defendants, and the Alabama Supreme Court initially affirmed. <u>Id.</u> On rehearing – solely on the issue of whether the day care worker could claim immunity – the Supreme Court held that Art. I, § 14 did not grant sovereign immunity to state agents where (1) there was no significant state interest involved such that suit was not truly against the state; and (2) the state agent is not entitled to substantive immunity she was exercising a discretionary function. <u>Id.</u> at 395. The Court went on to find that the day care worker was not entitled to immunity because the allegations of the complaint overcame the first prong: "[a]ny state interest affected by the suit is far too incidental to supply the requisite nexus for extension of constitutional immunity to the [day care worker]." <u>Id.</u>

Building upon the <u>DeStafney</u> decision, the Alabama Supreme Court decided <u>Cranman</u> over a decade later. <u>Cranman</u> *also* involved a lawsuit against employees of the University of Alabama. 792 So. 2d at 394. One or more doctors at the university misdiagnosed Michael

15

Cranman, a student at the University of Alabama. He later developed terminal cancer and filed suit against the doctors, the student health center, and other defendants. Id.

Michael died while the suit was pending and his estate was substituted as the proper party. 792 So. 2d at 394. The trial court subsequently granted immunity to one of Michael's doctors. After the Court of Civil Appeals affirmed the circuit court's judgment, the estate appealed to the Alabama Supreme Court. Id. at 394-95. On appeal, the estate argued that the central issue was "whether the physicians in the rendition of purely medical treatment to an individual are performing a discretionary act as contemplated by case law and are legally entitled to officer-agent immunity under the Constitution for the State of Alabama, Art I. Sec. 14." Id. at 396.

The Alabama Supreme Court answered this question in the negative. 792 So. 2d at 406. In so doing, the Court expanded upon DeStafney and explicitly adopted the following exceptions:

> A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
>
>> (1) formulating plans, policies, or designs; or
>> (2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
>>> (a) making administrative adjudications;
>>> (b) allocating resources;
>>> (c) negotiating contracts;
>>> (d) hiring, firing, transferring, assigning, or supervising personnel; or
>>
>> (3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
>> (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
>> (5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

> Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
>
>> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

792 So. 2d at 405.

Neither of these cases involved Alabama sheriffs or their deputies. Neither of the cases in this line involved the broader category of state constitutional officers. None of the defendants in these cases were carrying out law enforcement duties. As alleged in the Second Amended Complaint, these Defendants were acting in their capacities as sheriff or deputy sheriff. (Doc. 46 at ¶¶ 2-4, 16.) In fact, it is only in their capacities as sheriff or deputy sheriff that these Defendants would have any responsibility or authority to hold inmates or work at the jail. Therefore, DeStafney and its progeny, are not applicable.

## CONCLUSION

Based upon the foregoing and the arguments contained in the principal brief of Sheriff Clark, Deputy Edgar, and Deputy Inabinett, the Plaintiff's claims against them are due to be dismissed as a matter of law.

Respectfully submitted this 12th day of February, 2007.

        **s/Gary L. Willford, Jr.**
        DARYL L. MASTERS Bar Number: MAS018
        GARY L. WILLFORD, JR. Bar Number: WIL198
        Attorneys for Defendants
        WEBB & ELEY, P.C.
        7475 Halcyon Pointe Road
        Post Office Box 240909
        Montgomery, Alabama 36124
        Telephone: (334) 262-1850
        Fax: (334) 262-1889
        E-mail: gwillford@webbeley.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 12th day of February, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: **Steven Keith Herndon, Esq., Matthew Y. Beam, Esq., Alan T. Hargrove, Esq., R. Brett Garrett, Esq., Bert P. Taylor, Esq.**

Additionally, the following parties have been served via United States Mail, postage-prepaid:

Oscar Roy Doster
AIS 177168
P.O. Box 150
Mt. Meigs, Alabama 36057

James Darren Harnage
AIS 239251
P.O. Box 150
Mt. Meigs, Alabama 36057

Darden Engineers
P.O. Box 126
Dadeville, Alabama 36853-0126

        **s/Gary L. Willford, Jr.**
        OF COUNSEL