**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **JENNIE COURTNEY,** | ) | |
| **AS ADMINISTRATIX OF THE** | ) | |
| **ESTATE OF DENNIS COURTNEY,** | ) | |
| **DECEASED,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO. : 2:06-CV-600-DRB** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ANTHONY CLARK, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT DICKEY AND ASSOCIATES, INC.'S**
**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Defendant, Dickey and Associates, Inc. (hereinafter "Dickey") and hereby files this Narrative Statement of Undisputed Facts and Brief in Support of its Motion for Summary Judgment demonstrating that there is no genuine issue as to any material fact and that this Defendant is entitled to a judgment as a matter of law.

## I.    NARRATIVE STATEMENT OF UNDISPUTED FACTS

In 1995, the Covington County Commission contracted with Hollis & Spann, Inc. to construct a jail in Covington County, Alabama in accordance with plans and specifications provided by architects Seymour & Lisenby (hereinafter "Seymour"). (See Aff. of John Eiland, attached as Ex. "A" to Hollis & Spann, Inc's Motion for Summary Judgment--attached hereto as Ex. "A" for reference). Dickey, a mechanical engineer, entered into a business agreement with Seymour to provide plumbing and HVAC drawings in accordance with Seymour's plans and specifications. (See Dickey's response to Plaintiff's Interr. No. 3, attached hereto as Ex. "B"). The facility was constructed between February 12, 1995 and April 2, 1996. (See Ex. "A" ¶¶ 4-5).

1

On March 31, 2005, approximately nine (9) years after construction of the jail was completed, two inmates, Oscar Roy Doster and James Darren Harnage, escaped from the Covington County Jail. (See Doc. No. 62, ¶ 16). After escaping, the inmates fled to Texas where they, apparently, murdered an individual, Dennis Courtney. (See Doc. No. 62, ¶ 14). Dennis Courtney's wife, Jennie Courtney, now brings this action as Administrator of the Estate of Dennis Courtney, for damages pursuant to Alabama's Wrongful Death Statue and 42 U.S.C. § 1983. (See Doc. No. 62).

The Plaintiff alleges that Dickey is liable for Dennis Courtney's death by negligently/wantonly failing to design, inspect, construct and/or install the plumbing and HVAC systems at the Covington County Jail which allowed inmates Doster and Harnage to escape. (See Compl. and Doc. No. 62). The Plaintiff also alleges that Dickey failed to train and/or hire employees at the Covington County Jail to appropriately maintain these systems after they were installed and that it failed to maintain an appropriate surveillance system.[1] (See Doc. No. 62, ¶ 31). This Court should grant Dickey summary judgment because it could not, under any theory, be liable for Mr. Courtney's death.

## II.    THE SUMMARY JUDGMENT STANDARD

The summary judgment procedure is designed to isolate and dispose of factually unsupported claims or defenses. See Celotex Corp. v Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It should not be regarded as a disfavored procedural shortcut but should be viewed as an integral part of the federal rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." See Celotex Corp., 477 U.S. at 323-327. "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses tried to a jury, but also for the rights of persons opposing such claims and

defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." Id.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Harden v. American Airlines, 178 F.R.D. 583, 584 (M.D. Ala. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." Id. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it betas the ultimate burden of proof. See Celotex, 477 U.S. at 322-323.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" See Celotex, supra. at 322-323. "A dispute of material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Harden, supra. at 584. "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." See Haves v. City of Miami, 52 F.3d 918, 920 (11th Cir. 1995).

---

[1] Dickey was not involved in designing any surveillance system at the Covington County Jail. (See Ex. "B").

Therefore, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." See Matushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The relevant rules of substantive law dictate the materiality of a disputed fact," and a genuine issue of material fact does not exist unless there is significant evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." See Haves, supra. at 921. "If the nonmovant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant." See Harden, supra. at 584.

### III.    ARGUMENT

### A.    Dickey Owed no Duty to Protect Mr. Courtney from the Alleged Criminal Acts of Escaped Inmates Doster and Harnage.

In order to establish a prima facie case of negligence, a plaintiff must prove: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached the duty; (3) that the defendant's breach of duty was a proximate cause of the plaintiff's damages; and (4) that the plaintiff suffered damages. See Ala. Dep't of Corr. v. Thompson, 855 So. 2d 1016, 1022 (Ala. 2003). A duty is a legally recognized obligation to conform to a particular standard of conduct towards another. Id. Whether a duty exists is a question of law for the court. Id.

It is well settled in Alabama that a person has no duty to protect another from the criminal acts of a third person (here Doster and Harnage) unless some special relationship or circumstance justifies the imposition of liability. See Ziva Jewelry, Inc., v. Car Wash Headquarters, Inc., 897 So. 2d 1011, 1016 (Ala. 2004). "Special circumstances" arise only when the defendant "knew or had reason to know of a probability of conduct by [a third person] that would endanger the plaintiff." See Ziva, supra. at 1016. In order to find these circumstances, the

4

*particular* criminal activity of the third party must have been foreseeable. Id. (emphasis added). It is not enough to impose liability that a defendant knew a third party may have harbored some propensity for violence toward the plaintiff that eventually came to fruition. See Carroll v. Shoney's Inc., 775 So. 2d 753 (Ala. 2000).

In Alabama Dept. of Corrections v. Thompson, 855 So. 2d 1016 (Ala. 2003), a case with facts similar to the case at bar, an inmate escaped from a youth center by hiding in a cabinet that had been constructed for a vendor. Id. at 1017. The inmate was spotted as he leapt from the rear of the vendor's truck after exiting the facility. Id. While evading police pursuit, the inmate broke into plaintiff's home, assaulted her, and stole her automobile. Id. at 1017.

The assaulted plaintiff later sued the Alabama Department of Corrections (ADOC), the youth center's warden and two correctional officers claiming that they acted negligently and/or wantonly in allowing the inmate to escape from confinement, which, subsequently, lead to plaintiff's assault. Id. The plaintiff argued that liability should be imposed upon the defendants because a "special relationship" existed between the prison guards and the escaped inmate that created a duty to protect plaintiff from assault. Id. at 1022.

The Alabama Supreme Court disagreed with plaintiff, determining that the relationship between the prison guards and the inmate did not qualify as a "special relationship" for purposes of imposing liability for the escaped inmate's actions. Id. at 1023. The Court held:

> We find the situation of prison guards more analogous to that of police officers, where a duty is owed generally to the prison population and to society...Here, the two defendant guards were responsible for watching the general prison population of approximately ninety inmates, and no particular special relationship was alleged between defendant guards and the escaped inmates that was different from the relationship between the guards and the general inmate population. Thus, we decline to find that a special relationship existed between defendant guards and the escaped inmates.

Id. at 1023. Since there was no special relationship (or any special circumstances) that would have imposed a duty on the defendants to protect the plaintiff, summary judgment for defendants was proper. Id. at 1025.

In Carroll v. Shoney's Inc., 775 So. 2d 753 (Ala. 2000), the Alabama Supreme Court utilized similar reasoning in affirming summary judgment in favor of the defendant, Captain D's restaurant, on the grounds that a person has no duty to protect another from the criminal acts of a third person. Id. at 757. Specifically, in Carroll, the administrator for the Estate of Mildred Harris, deceased, filed a wrongful death action against the Shoney's Corporation (which owns Captain D's) after Harris was murdered by her husband while working at a Captain D's restaurant. Id. at 754.

On the day preceding the murder, Harris' estranged husband entered the restaurant, pushed past an interim manager and proceeded to scream profanity into the back of the restaurant stating that he was going to "get" Harris. Id. at 754. The police were called and the estranged husband was forcibly removed from the premises. Id. Captain D's refused to press charges and the husband was released from custody. Id. After the incident, Harris was too scared to return home; as such, her co-employees loaned her money for a hotel room. Id.

The next day--the day of the murder--the restaurant's general manager, Rhonda Jones, was informed of Harris' husband's angry trespass into the back of the restaurant and threats against Harris the night before. Id. at 755. Jones was informed that the restaurant personnel had to call the police to remove Harris' husband. Id. Jones was also informed that Harris had told her coworkers that her husband had beaten her two days earlier and that she thought that he would kill her. Id. Nonetheless, Jones refused the deceased's plea to be excused from work, ordered the deceased to report to work, and promised to protect the deceased at work. Id. After Harris

presented to work, her estranged husband entered the restaurant and shot her in the back of the head, killing her instantly. Id.

On appeal, the Supreme Court of Alabama affirmed summary judgment on behalf of Captain D's finding, even under these circumstances, that the restaurant employees could not have reasonably foreseen that the decedent's husband would enter the restaurant and murder Harris. Id. at 757. The Court specifically determined that while employees of the restaurant may have had notice that the decedent's husband had a propensity for violence towards the deceased, none of the employees had specific knowledge that the murder was going to occur. Id. As such, the crime was not foreseeable. Id.

Here, based on these holdings, Dickey cannot be held liable for the alleged criminal acts of escaped inmates Doster and Harnage unless a special relationship existed between Dickey and the inmates that would justify imposing liability on Dickey for their violent acts against Mr. Courtney. See Thompson, supra. There is simply no special relationship here to satisfy this requirement. Certainly, if the Supreme Court of Alabama could find no special relationship in Thompson between correctional officers and the inmate they were assigned to guard, there can be no duty imposed on Dickey, whose only connection with the escaped inmates is that it helped design the heating and air conditioning aspect of the facility from which the inmates escaped nine (9) years after construction was completed.

Moreover, the specific criminal activity in question here--the alleged murder of Mr. Courtney--was not foreseeable to Dickey. Specifically, Dickey did not (1) possess specialized knowledge of Doster and Harnage's criminal propensity, (2) know that there was a probability that these inmates would escape, (3) know they would flee to Texas, and/or (4) know that they would murder Mr. Courtney once they arrived. Certainly, if the Carroll Court could not find

forseeability where Harris' estranged husband violently entered the restaurant and threatened harm prior to being removed by police the day before the murder, Dickey could not foresee Doster and Harnage's random acts of violence some nine (9) years after the project was completed. Dickey owed no duty to protect Mr. Courtney from the criminal acts of Doster and Harnage; and, as such, summary judgment is due to be granted.

**B.    Dickey Owed no Duty to Mr. Courtney Pursuant to its Business Agreement with Seymour.**

As discussed above, the only relationship between Dickey and the Covington County Jail project was through Dickey's business agreement with Seymour to provide plumbing and HVAC drawings pursuant to specification. (See Ex. "B").  In order to prevail on a negligence claim based on this business agreement, plaintiff must demonstrate that defendant owed some duty of care to the plaintiff.  See Davis v. Wal-Mart Stores, Inc., 64 F. Supp. 2d 1176 (M.D. Ala. 1999). As a general rule in Alabama, the lack of privity of contract is a defense to a negligence action. See Berkel & Co. Contractors, Inc. v. Providence Hospital, 454 So. 2d 496 (Ala. 1984). "Our cases hold that, where the charge of negligence is based upon breach of duty arising out of a contractual relationship, no cause of action arises in favor of one not in privity to the contract." See Weston v. National Mfrs. & Stores Corp., 45 So. 2d 459 (Ala. 1950).

However, there are exceptions to this general rule, such as where there is an invasion of a duty independent or concurrent with the contract. Id. "Although plaintiff may be barred from recovering from defendant as a third party beneficiary to defendant's contract with another, plaintiff may nevertheless recover in negligence for defendant's breach of duty where defendant negligently performs his contract with knowledge that *others are relying* on proper performance and the resulting harm is reasonably foreseeable." See Berkel, supra. at 501 (quoting Federal Mogul Corp. v. Universal Constr. Co., 376 So. 2d 716, 721 (Ala. Civ. App. 1979). (emphasis

8

added).

Since Dennis Courtney was not privy to the business agreement between Dickey and Seymour, the Plaintiff cannot demonstrate a substantive legal right of recovery unless she can prove concurrent duty under the agreement. See Berkel, supra.

In deciding whether to impose a concurrent duty in a construction context based on reliance, a court must consider, "(1) [t]he extent to which the transaction was intended to affect the other person; (2) the foreseeability of harm to him; (3) the degree of certainty that he suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury; (5) the moral blame attached to such conduct; and (6) the policy of preventing future harm." See Berkel, supra. at 503.

Here, the Plaintiff alleges that Dickey is separately and severally responsible for negligently/wantonly failing to design, inspect, construct and/or install the plumbing and HVAC systems at the Covington County Jail and that Dickey failed to train and/or hire employees at the Covington County Jail to appropriately maintain these systems in a manner to prevent the escape of Doster and Harnage. (See Doc. No. 62). However, in applying the above inquiries, there is no evidence that Dickey's agreement to provide Seymour with drawings for the jail was intended to affect Dennis Courtney, a Texas resident with no ties to the project. As discussed above, Dickey could not have foreseen (nine (9) years after the project was complete) that inmates Doster and Harnage would (1) escape from the Covington County Jail, (2) subsequently travel to Texas and, (3) make an independent decision to allegedly murder Mr. Courtney. Since Mr. Courtney was not privy to the business agreement between Dickey and Seymour--and since there was no collateral duty owed to Mr. Courtney concurrent to the agreement--Dickey owed no legal duty to protect Mr. Courtney from the independent acts of Doster and Harnage. Since Dickey owed Mr.

9

Courtney no duty arising from its business agreement with Seymour, Dickey is entitled to summary judgment as a matter of law.

## I.     The Plaintiff Cannot Prove Proximate Causation.

Assuming *arguendo* that Dickey owed Mr. Courtney a duty and that it acted negligently in discharging its duty (it did not), there is no causal connection between any act or omission of Dickey and Mr. Courtney's alleged murder. It is axiomatic that regardless of a tortfeasor's culpability (whether he failed to exercise reasonable care in carrying out a duty imposed upon him by law) he may not be held liable unless his wrongful act proximately caused the injury claimed. See Baptist Mem'l Hosp. v. Gosa, 686 So. 2d 1147, 1150 (Ala. 1996). As stated in Davis v. Wal-Mart, 64 F. Supp. 2d 1176, 1179 (M.D. Ala. 1999):

> Negligence alone does not afford a cause of action. Liability will be imposed only when negligence is the proximate cause of injury; injury must be a natural and probable consequence of the negligent act or omission with an ordinary prudent person ought reasonably to foresee would result in injury.

Id. at 1179.

In City of Mobile v. Largay, 346 So. 2d 393 (Ala. 1977), the plaintiff was accosted by a third party assailant who dragged her through an open cellar door into a vacant building owned by the City of Mobile, beat and raped her. Id. at 394. The plaintiff sued the City of Mobile arguing that it failed to maintain the vacant building in an appropriate manner to keep people from using it inappropriately. Id. at 393. At trial, the City's motion for directed verdict was denied based on plaintiff's failure to prove proximate causation. Id. at 394.

On appeal, the Supreme Court addressed the issue of whether the assailant's criminal act was an efficient, superseding or independent, intervening act relieving the City of any liability. Id. at 393. The Supreme Court noted, "[i]f, between the alleged negligent act or omission and the

injury, there occurs an independent, intervening, unforeseeable event, the causal connection between the alleged negligence and the injury is broken." Id. at 395 (quoting Vines v. Plantation Motor Lodge, 336 So. 2d 1338, 1339 (Ala. 1976)). The Court further noted that foreseeability is key in finding proximate cause and that "a person, who by some act or omission sets in motion a series of events, is not responsible for consequences of intervention of another agency, unless at the time of his original act or omission, the act of the intervening agency could reasonably be foreseen." Id. In reversing the trial court's decision, the Supreme Court of Alabama determined that it was not foreseeable to the City of Mobile that an unlocked building would be used for the perpetration of rape and, further, that the violent act was not a reasonably foreseeable consequence of the City's failure to appropriately maintain its building. Id. at 395.

Here, there is simply no basis in fact or in law to indicate that any action or inaction by Dickey proximately caused Mr. Courtney to be murdered. "Proximate cause is an act or omission that in the natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred. Mere proof that injury could have happened in the alleged way does not warrant the conclusion that it did so occur." See Southern Ry. Co. v. Dickinson, 100 So. 665, 669 (Ala. 1924). The random criminal acts of Doster and Harnage in allegedly murdering Mr. Courtney create an independent, intervening, and unforeseeable event breaking the causal chain between any alleged negligence on the part of Dickey.

It is the plaintiff's burden to demonstrate a causal relation between Dickey's alleged negligent or wanton acts and Mr. Courtney's death. Since the Plaintiff has failed to meet her burden, Dickey is entitled to summary judgment.

C.      **Plaintiff's Claims are Barred by the Statute of Limitations.**

Pursuant to Ala. Code § 6-5-221 (1975), the Plaintiff's claims are barred by the statute of limitations. Section 6-5-221(a) limits all civil actions against architects, engineers and builders for damages resulting from a defect or deficiency in the design, planning or specifications of the projects (including injury to or wrongful death of a person caused by any such defect or deficiency) to "two years next after a cause of action accrues or arises." Id. According to § 6-5-220(e), where the damage or injury is either latent or by its nature not discoverable in the exercise of reasonable diligence at the time of its occurrence, "the claim for relief shall be deemed to arise or accrue at the time the damage or injury is or in the exercise of reasonable diligence should have been first discovered, whichever is earlier." The final review for the construction of the Covington County Jail occurred on March 27, 1996. In this final inspection, the work performed under the construction contract for the jail was found to be substantially complete.

The Plaintiff claims that Dickey negligently or wantonly failed to properly provide plumbing and HVAC drawings. (See Doc. No. 62, ¶ 24). Any defect in the drawings should have been discovered (at the very latest) during the final inspection and review of the Covington County Jail on March 27, 1996; as such, any claims for improper design should have been commenced by approximately March 27, 1998. However, the Plaintiff filed this Complaint over eight (8) years later on June 2, 2006. (See Compl.) Since the statute of limitations bars any claims that Dickey failed to properly design the plumbing and HVAC systems for the Covington County Jail, this action is due to be dismissed.

**D.**    **Dickey is Not Responsible for Inspecting or Maintaining the Covington County Jail**.

In Alabama, it is the duty of the Covington County Commission to erect and maintain jails in Covington County. Ala. Code § 11-14-10 (1975) states as relevant:

> The county commission shall erect courthouses, jails and hospitals and other necessary county buildings, and such county commission shall have authority to levy a special tax for that purpose. Each county within the state shall be required to maintain a jail within their county.

Id. Under Ala. Code § 14-6-104, the county is obligated to pay any expenses for the maintenance of the jail. See King v. Colbert County, 620 So. 2d 623 (Ala. 1993). In Keeton v. Fayette County, 558 So. 2d 884, 886 (Ala. 1989), the Alabama Supreme Court held, "by using the phrase 'maintain a jail' [in § 11-14-10], the Legislature intended to require the county commission to keep a jail and all equipment therein in a state of repair and to preserve it from failure or decline." Id. While legal custody and charge of the jail is vested in the sheriff, § 14-6-1, the chairman of the county commission is authorized to enter and inspect the jail once each week. Id. and Ala. Code § 11-14-22 (1975).

Clearly, the Covington County Commission has the duty to ensure that its jails are appropriately constructed, inspected and maintained. See § 11-14-10 (1975). There is no duty imposed on private business to inspect or maintain county jails subsequent to their construction. Id. The county maintains these duties even if the county did not cause the defect to exist. See King, supra. (county's assertion that it did not actively cause a condition of disrepair could not independently save the county from liability).

Ala. Code § 12-16-191 (1975) provides further that the county grand jury is responsible for inspecting county jails to determine whether the jails are secure enough to prevent the escape of prisoners. Section 12-16-191 reads:

> It shall be the duty of the grand jury to make a personal inspection of the condition of the county jail in regard to its sufficiency for the safekeeping of prisoners, their accommodation and health and to inquire into the manner in which the same has been kept since the last session of the court. *If it shall be found that such jail is not constructed in the manner prescribed by law and so strongly and securely built as to prevent the escape of prisoners confined therein and properly ventilated, the grand jury shall, as often as may be necessary, cause the persons composing the county commission at the time such jail was insufficient to be indicted.*

Id. (emphasis added). This provision of the Alabama Code reflects the public policy of the State of Alabama that it is the duty of the Covington County Commission to ensure not only that its jails are appropriately maintained, but also to ensure that they are maintained to that degree necessary to prevent escape. Id. Tellingly, if the grand jury determines that the county's jails are not properly maintained, the grand jury has the duty to indict members of the county commission responsible for allowing the defects to develop. Id. Under the Code, private business is not responsible for protecting the health, safety, and welfare of the general public from escaped prisoners.

Since the Covington County Commission has the burden of properly inspecting and maintaining its jail facilities in a manner sufficient to prevent escape, the Plaintiff has no standing to bring this cause of action against Dickey. Dickey is entitled to a judgment as a matter of law.

14

E.    **The Plaintiff has Failed to Produce Expert Testimony Establishing that Dickey Breached the Applicable Standard of Care in Designing the Plumbing and HVAC Systems for the Covington County Jail.**

It is clear under Alabama law in order to prove that an engineer acted negligently in performing professional services, a plaintiff must set forth expert testimony to establish the appropriate standard of care that professionals, such as engineers, must exercise. See R.L. Reid, Inc. v. Plant, 350 So. 2d 1022, 1027 (Ala. 1977). This standard is based upon the learning, skill, and care ordinarily possessed and practiced by those ordinarily skilled in that profession. See Looker v. Gulf Coast Fair, 81 So. 832, 835 (1919). When the engineer's actions meet the standard of those skilled and experienced in that profession, the engineer has met his responsibility and cannot be held liable for alleged negligence. See Collins Co. v. Decatur, 533 So. 2d 1127 (Ala. 1988). See also Reid, supra. at 1026. ("Before [engineer] could be found negligent in the performance of his duty, it must be shown that he failed to meet the standards of his profession existing at the time he performed the services.")

On August 21, 2006, this Court issued a Uniform Scheduling Order that instructed the Plaintiff to identify experts and provide Rule 26 reports by March 1, 2007. (See Doc. 21, ¶ 8). The Uniform Scheduling Order specifically required that the Plaintiff by March 1, 2007, "disclose [to each other] the identity of ANY person who may be used at trial to present evidence under Rules 702, 703 or 705 of the Federal Rules of Evidence, and provide the reports of retained experts or witnesses whose duties as an employee of the party regularly involved giving expert testimony, required by Rule 26(a)(2) of the Federal Rules of Civil Procedure." (Id.)

The Plaintiff failed to disclose any expert witness to testify against Dickey by the March 1, 2007 deadline set forth in the Court's Uniform Scheduling Order. (See Doc. 78).[2] The Court's Order clearly directs, "[a]ll parties are expected to comply with each and every provision of this order in a timely manner, and extensions will be granted in only extraordinary and unforeseeable circumstances." (See Doc. 21, ¶ 1). To date, there has been no expert identified to offer criticism against Dickey with regard to its role in designing the Covington County Jail. (See Doc. 78). Eighty-nine (89) days have passed since Plaintiff's deadline expired. (Id.) Since the Plaintiff has failed to present expert testimony of an engineer similarly situated to Dickey as necessary to establish a breach of the standard of care, she may not maintain this action against it; again summary judgment is due to be granted.

IV.    **CONCLUSION**

Dickey was responsible for providing plumbing and HVAC drawings in accordance with Seymour's plans and specifications. It had no duty under Alabama law to protect Mr. Courtney from the criminal acts of Doster and Harnage since there was no special relationship between Dickey and these inmates. It was not foreseeable to Dickey in 1996--when construction of the Covington County Jail was completed-- that nine (9) years later Doster and Harnage might devise a way to escape, travel to Texas, and murder Mr. Courtney. Moreover, there is no causal connection between any act or omission of Dickey and Mr. Courtney's death. As discussed above, the Plaintiff has failed to set forth testimony from an expert witness similarly situated to Dickey as is necessary to establish a breach of the standard of care.

The Plaintiff's allegation that Dickey had a duty to inspect and maintain the Covington County Jail is simply unfounded since Ala. Code §§ 11-14-10 and 12-16-191 clearly place the

_____

[2] The Plaintiff filed an untimely motion to extend this deadline on March 2, 2007. (See Doc. 78). This motion is currently pending before the Court. (See Doc. 78).

burden of inspecting and maintaining the Covington County Jail upon the Coving County Commission. The grand jury of Covington County has the duty of policing the commission to determine whether its jails are appropriately maintained to prevent escape. As such, there is no maintenance duty imposed upon Dickey, a private business.

Finally, the Plaintiff's claims are barred by the statute of limitations found in Ala. Code § 6-5-221.

Based on the foregoing, Dickey respectfully requests that this Honorable Court enter summary judgment in its favor.

Respectfully submitted this the 29th day of May, 2007.

> _s/ Alan T. Hargrove, Jr._
> _s/ R. Brett Garrett_
> Alan T. Hargrove (HAR236)
> R. Brett Garrett (GAR085)
> Attorneys for Defendant Dickey &
> Associates, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on <u>May 29, 2007</u>, I electronically filed the foregoing with the Clerk of the court using CM/ECF system which will send notification of such filing to the following:

>Matthew Y. Beam, Esq.
>J. David Greene, Jr., Esq.
>Steven Keith Herndon, Esq.
>Britt V. Bethea, Esq.
>Daryl L. Masters, Esq.
>Will G. Phillips, Esq.
>Bert Pittman Taylor, Esq.
>Gary L. Willford, Jr., Esq.

I hereby certify that on <u>May 29, 2007</u>, I have served the foregoing by placing a copy of the same in the United States Mail, postage prepaid, upon:

Oscar Roy Doster (AIS # 177168)
P.O. Box 150
Mt. Meigs, Alabama 36057

James Darren Harnage (AIS # 239251)
P.O. Box 150
Mt. Meigs, Alabama 36057

<u>s/ R. Brett Garrett</u>
OF COUNSEL
