IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JENNIE COURTNEY, ETC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No.:  2:06-CV-00600-MHT |
| | ) |
| ANTHONY CLARK, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT COVINGTON COUNTY, ALABAMA'S
MEMORANDUM BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
<u>PLAINTIFF'S SECOND AMENDED COMPLAINT</u>**

COMES NOW Covington County, Alabama, a Defendant in the above-entitled action, and submits this Memorandum Brief in support of its contemporaneously filed Motion to Dismiss Plaintiff's Second Amended Complaint.

**INTRODUCTION**

On November 1, 2006, the Plaintiff filed a Motion to Amend and Amended Complaint that, for the first time, brought claims against Covington County, Alabama (hereinafter "Covington County"). (Doc. 38 at ¶ 12.) The Court originally granted the Plaintiff's Motion to Amend the following day on November 2, 2006, but gave the Defendants seven days to object. (Doc. 39.)  Defendants Clark, Edgar, and Inabinett filed an Objection and a Motion to Strike which were overruled by the Court on November 20, 2006. (Docs. 41, 42, 43.)  The objection was based upon scurrilous accusations contained in the Amended Complaint (and a claim based upon them), that were removed when the Plaintiff subsequently moved to amend again and filed her Second Amended Complaint. (Doc. 46.) The Court issued an Order setting the latest motion for submission on December 11, 2006.  The Court granted the Plaintiff's unopposed motion on January 11, 2007.  (Doc. 60.)

1

The Plaintiff's thirteen-count Second Amended Complaint asserts various federal and state law claims against, *inter alia*, Covington County, Alabama. The Plaintiff's claims stem from the escape of Oscar Roy Doster and Darren Harnage from the Covington County Jail and their alleged murder of Dennis Courtney on or before April 6, 2005. (Doc. 62 at pp. 3-5.) The Plaintiff's claims all assert Covington County engaged in negligent or wanton conduct in the hiring of persons to install and operate the jail's surveillance system, installation of the jail's ventilation system, inspection of the ventilation system, training of jail employees, and failure to warn the public of dangers related to an alleged lack of security in the jail. (Doc. 62 at pp. 5-20.)

Each of the causes of action in the Second Amended Complaint alleges negligent or wanton conduct. (Doc. 62 at pp. 5-20.) As did the original Complaint and the Amended Complaint, the Second Amended Complaint lacks appropriate allegations to state a § 1983 claim (e.g., that the defendants were acting under color of law). (See generally Doc. 62.) Also as before, the causes of action in the new Complaint (with the exception of the Sixth Cause of Action) contain both a state and a federal claim. Each cause of action contains an allegation in its *ad damnum* clause seeking compensation under the Alabama Wrongful Death Act and 42 U.S.C. § 1983. The only specific federal right referenced in the Second Amended Complaint is the Fourteenth Amendment which, by the Plaintiff's previous pleadings, the Defendant takes to mean each cause of action is a substantive due process "special circumstances" claim.

**ARGUMENT**

A motion to dismiss will be granted when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387 (11th Cir. 1998) (affirming district court's grant of 12(b)(6) dismissal) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Plaintiff's Second Amended Complaint, at least insofar as it relates to these

Defendants, contains little more than conclusory allegations that cannot survive a motion to dismiss.  See Aquatherm Industries, Inc. v. Florida Power & Light Co., 145 F.3d 1258, 1261 (11th Cir. 1998) (affirming dismissal and approving district court's reasoning that "vague, conclusory allegations are insufficient to state a claim upon which relief can be granted"). "Pleadings must be something more than an ingenious academic exercise in the conceivable." Marsh v. Butler County, 268 F.3d 1014, 1037 (11th Cir. 2001) (en banc) (citation omitted).  In addition, unsupported conclusions of law or of mixed law and fact are not sufficient to withstand dismissal under Rule 12(b)(6).  Marsh, 268 F.3d at 1036 n.16; see also South Florida Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996) (noting "as a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss").

Covington County is entitled to a dismissal of all of the Plaintiff's claims.  Under the facts alleged, no recovery may be had against Covington County as a matter of law.

I. **THE PLAINTIFF'S FEDERAL CLAIM IS DUE TO BE DISMISSED UNDER RULE 4(m) OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

The Plaintiff chose not to name Covington County as a party to this action in this action in its initial Complaint (Doc. 1), but named Covington County as a Defendant for the first time in her first Amended Complaint, which she filed on December 1, 2006.  (Doc. 38.)  The Court granted the Plaintiff's Motion to Amend on December 2, 2006.  (Doc. 40.)  The Plaintiff filed a second Amended Complaint on January 11, 2007, which also named Covington County as a Defendant.  (Doc. 62.)  On June 26, 2007, the Plaintiff finally served Covington County with copies of the Second Amended Complaint, 207 days after Covington County was first named as a Defendant in this action.

3

Rule 4(m) of the Federal Rules of Civil Procedure requires that a Plaintiff serve a Defendant with the summons and complaint within 120 days of filing his Complaint. Rule 4(m) provides:

> If the service of the summons and complaint is not made upon a defendant within 120 days of filing the complaint, the court … shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

The burden is on the Plaintiff, not the Court or the Clerk's Office, to ensure that all parties are served within the time limits provided by Rule 4(m). Lepone-Dempsey v. Carroll County Com'rs, 476 F.3d 1277, 1280-81 (11th Cir. 2007) ("A plaintiff is responsible for serving the defendant with a summons and the complaint within the time allowed under Rule 4(m).") Here, as noted above, the Plaintiff did not serve Covington County until 207 days after Covington County was first named as a Defendant in this action. Accordingly, this Court must either dismiss the Plaintiff's action against Covington County without prejudice, or it must give the Plaintiff an opportunity to show good cause for her failure to serve Covington County within the time period provided by Rule 4(m).

As the Eleventh Circuit has recognized, "Good cause exists 'only when some outside factor[,] such as reliance on faulty advice, rather than inadvertence or negligence, prevented service.'" Lepone-Dempsey, 476 F.3d at 1281 (quoting Prisco v. Frank, 929 F.2d 603, 604 (11th Cir. 1991) (per curium)). Accordingly, the Plaintiff must show that the cause for her delay in service was something other than negligence or inadvertence. To the extent that the Plaintiff cannot make such a showing, this Court should dismiss all claims against the Defendant, Covington County.

The Plaintiff may contend that this Court, in its discretion, should not penalize the Plaintiff for disregarding the mandates of Rule 4(m), because a dismissal without prejudice at

this stage would, in effect, bar any claims the Plaintiff could assert against Covington County, as the statute of limitations on the Plaintiff's claims ran months ago.[1]  However, the mere fact that the statute of limitations has expired on the Plaintiff's claim does not obligate the Court to allow the Plaintiff extra time to serve the Defendant, Covington County.  See, e.g., Horenkamp v. Van Winkle And Co., Inc., 402 F.3d 1129, 1133 (11th Cir. 2005) (recognizing that "the running of the statute of limitations does not require that a district court extend the time for service of process under the new rule [4(m)].")  Both the Third and the Seventh Circuits have upheld the dismissal of a claim against a defendant not served within the 120-day time frame provided by Rule 4(m), even though the dismissal barred the plaintiff's claims because the statute of limitations had expired.  See Petrucelli v. Bohringer and Ratzinger, 46 F.3d 1298, 1306 (3d Cir. 1995) ("We emphasize that the running of the statute of limitations does not require the district court to extend time for service of process.  Rather, absent a finding of good cause, a district court may in its discretion still dismiss the case, even after considering that the statute of limitations has run and the refiling of an action is barred."); Panaras v. Liquid Carbonic Industries Corp., 94 F.3d 338, 341 (7th Cir. 1996) ("The running of the statute of limitations does not require that a district court extend the time for service of process under the new rule. Petrucelli, 46 F.3d at 1306.  Rather, absent a finding of good cause, a district court may in its discretion still dismiss a case even after considering that the statute of limitations has run.").

       Therefore, this Court should dismiss the Plaintiff's claims against Defendant, Covington County, because the Plaintiff failed to serve Defendant, Covington County, within the 120-day time limit provided by Rule 4(m) of the Federal Rules of Civil Procedure.

---

[1] The statute of limitations ran on the Plaintiff's claims against Covington County on April 9, 2007.  The time allotted to the Plaintiff under Rule 4(m) to serve Covington County with a summons and the Amended Complaint expired on March 31, 2007.  Had the Plaintiff complied with the mandates of Rule 4(m), her claims against Covington County would have been timely.

## II.     THE PLAINTIFF'S FEDERAL CLAIM IS DUE TO BE DISMISSED.

In the one paragraph that specifically mentions a federal right, the Plaintiff alleges that the Defendants violated the Fourteenth Amendment rights of Dennis Courtney. (Doc. 62 at ¶ 13.)  Assuming, *arguendo*, that Covington County was negligent/wanton in its conduct, there is no constitutional violation.  Consequently, the Plaintiff cannot meet her first burden under the qualified immunity test.

The Due Process Clause of the Fourteenth Amendment does not turn state law torts into constitutional violations.  DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 202 (1989).  "[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."  Id., 489 U.S. at 196.  "As a general matter, then . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  Id. at 197.

The Fourteenth Amendment's due process clause was intended to prevent the government "from *abusing* [its] power, or *employing* it as an instrument of oppression." Davidson v. Cannon, 474 U.S. 344, 348 (1986) (emphasis added).  The Due Process Clause prevents the government from engaging in an "*affirmative* abuse of power." DeShaney, 489 U.S. at 196 (quoting Parratt v. Taylor, 451 U.S. 527, 549 (1981) (Powell, J., concurring in result) (emphasis added)).  The guarantee of substantive due process has historically "been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." Collins v. City of Harker Heights, 503 U.S. 115, 127 n.10 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986) (emphasis in the original).)  The Due Process Clause, therefore, protects the people from affirmative actions of the State.

A careful review of the Second Amended Complaint reveals Covington County is not accused of taking any affirmative acts to deprive Dennis Courtney of any right to which he was entitled. The Second Amended Complaint alleges that Sheriff Clark and his staff "allowed" Doster and Harnage to escape. (Doc. 62, at ¶¶ 16, 17, 19.) The Plaintiff alleges specifically that the inmates were "allowed" to escape because the Sheriff and his staff "failed to keep a proper lookout and/or properly monitor and supervise" the inmates. Id. at ¶ 20. The only factual allegations aimed at Covington County are:

- It was "responsible for the design, engineering and/or construction of the Covington County Jail facility." Id. at ¶ 22; and

- It was "responsible for the installation and proper operation of the surveillance system in the Covington County Jail facility." Id. at ¶ 23.

None of these actions are "affirmative" abuses of power.

Furthermore, the Due Process Clause does *not* ensure that the State protects the people from each other. DeShaney, 489 U.S. at 196-97 (stating "[a]s a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.") There are, to be sure, certain exceptions to the general rule that the Court has described "special relationships" where the government does incur the burden of protecting an individual against private violence. DeShaney, 489 U.S. at 198-99 (discussing cases where the government restricts a citizen's ability to provide for or defend himself, i.e., where the citizen is an inmate or involuntarily committed to a mental health institution).[2] The duty arises from the limitations the government imposes on the individual. Id. at 200. However, there can be no "special relationship" where, as here, the government has imposed no restrictions

---

[2] See Estelle v. Gamble, 429 U.S. 97 (1976); Youngberg v. Romeo, 457 U.S. 307 (1982).

on the citizen or impeded his ability to act in his own interests. Lovins v. Lee, 53 F.3d 1208, 1210 (11th Cir. 1995).

The Eleventh Circuit's decision in Lovins is squarely on point and dispositive of the instant case. In Lovins, the plaintiff was kidnapped, robbed, raped, and sodomized by an inmate who had been released by the defendant jail officials. 53 F.3d at 1209. The inmate was being held on a "peeping tom" offense and violation of his probation for his previous convictions of theft, robbery, kidnapping, and rape. Id. Nonetheless, the inmate was made a jail trusty and was given several weekend passes. Id. Finally, he was given a one-week "emergency" pass during which time he committed the above-referenced crimes against the plaintiff. Id. The Eleventh Circuit assumed for purposes of appeal that as a matter of state law, the inmate was not eligible to be a trusty ***and his release was illegal***. Id. Nonetheless, the Eleventh Circuit held that "[b]inding precedent requires us to hold that ***there is no general substantive due process right to be protected against the release of criminals from confinement, even if that release violates state law***." Id. (emphasis added).

The plaintiff in Lovins attempted in vain to avoid the clear implications of DeShaney. First, she argued that her case fit into the "special relationship" exception. 55 F.3d at 1210. The Eleventh Circuit held that the exception was limited to circumstances where there is "a special relationship between the government and the victim of violence or mistreatment, a circumstance . . . lacking in [the plaintiff's] case." Id. The Court noted that the government defendants had not imposed any restrictions on the plaintiff to act in her own behalf, so there could be no special relationship. Id. The plaintiff "was in all respects a member of the general citizenry" for whom no special relationship could exist. Id.

The plaintiff next argued that the state statutes restricting the release of prisoners entitled her something under state law that was protected by the Due Process Clause. Lovins, 55 F.3d at

8

1210.  The Eleventh Circuit easily disposed of this argument as well by citing to two cases, one from the Supreme Court and the other from the Eleventh Circuit.  Id. at 1210-11 (discussing Collins v. City of Harker Heights, 503 U.S. 115 (1992) and Jones v. Phyfer, 761 F.2d 642 (11th Cir. 1985)).  The Eleventh Circuit noted that the Supreme Court's Collins decision explicitly held that a violation of state law cannot give rise to a substantive due process claim.  Lovins, 55 F.3d at 1210-11.

Like Lovins, the Eleventh Circuit's decision in Jones is instructive on the claims before this Court and was found by the Lovins court to dispose of the plaintiff's second attempt at avoiding DeShaney.  In Jones, the plaintiff's deceased was an elderly woman who was raped in her home by a juvenile delinquent who was being held by the Alabama Department of Youth Services for ***breaking into the same woman's home six months earlier***.  761 F.2d at 643.  As in Lovins, the plaintiff in Jones also contended that the delinquent's release on a Christmas furlough was a violation of state law.  Id. at 647.  Nevertheless, the Eleventh Circuit held in Jones that "[t]he fact that defendants may have violated the duties set out by state law for employees of the Department of Youth Services does not mean that the defendants deprived the plaintiff of her liberty rights without due process of law."  Id.  Even if the Jones plaintiff had a state tort claim, such a claim was insufficient to give her a valid constitutional claim.  Id.

As in Lovins, the Plaintiff's decedent "was in all respects a member of the general citizenry" with whom the Defendants had no special relationship.  55 F.3d at 1210.  In fact, Mr. Courtney was even further away from being in such a relationship because he was neither a citizen of Covington County, Alabama, nor physically located within its territorial borders at the time he was allegedly killed by Doster and Harnage.  Consequently, Mr. Courtney was not even a member of the "general citizenry" of Covington County or the State of Alabama.

9

There is also no allegation that there was any kind of relationship between this Defendant and Mr. Courtney (again because he was not a citizen of, or located in, Covington County specifically or Alabama generally) or Doster/Harnage and Mr. Courtney. Even if the Plaintiff could adduce some kind of evidence establishing both a link between the alleged killers and Mr. Courtney *and* that these Defendants were aware of the link, Jones forecloses any possibility of a viable substantive due process claim based upon that factual scenario. 761 F.2d at 647. Accordingly, as a matter of clear, unambiguous, and most of all mandatory authority, the Plaintiff's Second Amended Complaint does not and cannot properly set forth a Fourteenth Amendment substantive due process violation against Covington County.

### III. COVINGTON COUNTY IS ENTITLED TO A DISMISSAL OF ALL OF THE PLAINTIFF'S STATE LAW CLAIMS, AS A MATTER OF LAW, BECAUSE IT HAS NO RESPONSIBILITY UNDER ALABAMA LAW FOR THE OPERATIONS OF THE COVINGTON COUNTY JAIL.

Covington County is entitled to a dismissal of the Plaintiff's state law claims against it for two reasons. First, Covington County cannot be held responsible for how the sheriff runs the jail. Second, none of the named Defendants are agents of Covington County as a matter of law.

### A. Covington County is not Responsible for the Operation of the Covington County Jail.

The Eleventh Circuit in Turquitt v. Jefferson County, sitting en banc, analyzed Alabama law with respect to whether Alabama counties possessed any authority over the operation of county jails or the supervision of jail employees and its inmates. 137 F.3d 1285, 1288-1291 (11th Cir. 1998). In Turquitt the Eleventh Circuit found as follows:

> A thorough analysis of the [Alabama] Code reveals that ***no statute authorizes counties to supervise inmates in the county jails***; instead, ***authority over inmates is expressly delegated to Alabama sheriffs. Moreover, in operating the jails, sheriffs are subject to control by state executive agencies, not by counties***.
>
> ***Under the Alabama Code, the sheriff has control over the inmates of the jail, the employees of the jail, and the jail itself***. The Code bestows upon the sheriff "the legal custody and charge of the jail in his county and all prisoners committed

> thereto." Ala. Code § 14-6-1 (1995). **The Alabama Supreme Court has held that § 14-6-1 demonstrates that "the sheriff's authority over the jail is totally independent of the [county commission]."** King v. Colbert County, 620 So. 2d 623, 625 (Ala. 1993). The sheriff appoints, directs, and controls the deputies and jailers who work at the jail. Ala. Code § 14-6-105. **The County has no authority to manage the sheriff's employees**. See Lockridge v. Etowah County Comm'n, 460 So. 2d 1361, 1363 (Ala. Civ. App. 1984); see also Terry v. Cook, 866 F.2d 373, 379 (11th Cir. 1989) (finding that Alabama county commissioners have no authority to hire or fire deputies or jailers).

Id. at 1289 (emphasis added).

As a result, an Alabama county cannot be held vicariously liable under § 1983 for injuries arising from the sheriff's management of the jail. Id. at 1286; see also McMillian v. Monroe County, 520 U.S. 781, 788 (1997) (holding Alabama sheriff policymaker of state and not county). Further, Covington County cannot be held liable under § 1983 on a *respondeat superior* theory. See Monell v. Department of Social Servs., 436 U.S. 658, 691 (1978).

In the Second Amended Complaint, the Plaintiff has specifically alleged that it was the Sheriff and his staff's *operation* of the jail that led to the escape. Specifically, the Plaintiff has alleged:

- "Oscar Roy Doster along with inmate James Darren Harnage *was allowed to escape* from the jail . . ."

- "Defendants, Oscar Roy Doster, James Darren Harnage and others *were allowed to escape from the Covington County Alabama jail by the Sheriff and his employees*."

- "Sheriff Anthony Clark and his staff *failed to keep a proper lookout and/or properly monitor and supervise the activities of Oscar Roy Doster and other inmates*."

(Doc. 62 at ¶¶ 16, 17, and 20. (emphasis added).) The Plaintiff has clearly and unambiguously pled that it was the Sheriff's *operation* of the jail that "allowed" the inmates to escape. As Covington County has no responsibility for the operations of the jail, the Second Amended Complaint fails to state a valid state law claim against Covington County.

11

### B.     Covington County Cannot be Held Liable Under a *Respondeat Superior* Theory.

As alluded to above, Covington County is not vicariously liable for the actions of the Sheriff and his employees. The Sheriff of Covington County, Alabama, is an executive officer of the State of Alabama. Ala. Const. art. V, § 112. Under Alabama law, a sheriff is not treated as an "employee of the county for purposes of imposing liability on the county under a theory of *respondeat superior*." Parker v. Amerson, 519 So. 2d 442 (Ala. 1987); see also King, 620 So. 2d at 625 ("The sheriff's authority over the jail is totally independent of the Colbert County Commission. . . . Therefore, . . . Colbert County itself cannot be held vicariously liable for his actions or inaction"); Hereford v. Jefferson County, 586 So. 2d 209, 210 (Ala. 1991). Thus, under state law, a sheriff is not even an agent of the county – let alone a policymaker. Accordingly, to the extent the Plaintiff's claims are based upon vicarious liability arising out of the actions of the Sheriff and his employees, Covington County is entitled to have them dismissed.

### IV.    THE PLAINTIFF'S COMPENSATORY DAMAGES CLAIMS EXCEED THOSE ALLOWED BY LAW AND HER PUNITIVE DAMAGES CLAIMS ARE DUE TO BE DISMISSED.

Even if the Plaintiff had a valid claim against Covington County, state and federal law severely limit the amount of recovery she may obtain. First, Alabama law bars the recovery of any amount over $100,000.00. Second, both state and federal law prohibit the imposition of punitive damages against Covington County.

### A.     Alabama Law Caps Damages at $100,000.00.

The Plaintiff has not specified the amount of damages she claims. Alabama law "caps" the amount of compensatory damages that may be awarded against a county or a city. See ALA. CODE §§ 11-93-1(1) and 11-93-2. Under Alabama law, the Plaintiff may not recover more than $100,000.00.

> The recovery of damages under any judgment against a governmental entity ***shall be limited to $100,000.00 for bodily injury or death for one person*** in any single occurrence. ***Recovery of damages under any judgment or judgments against a governmental entity shall be limited to $300,000.00 in the aggregate where more than two persons have claims*** or judgments on account of bodily injury or death arising out of any single occurrence.

ALA. CODE § 11-93-2 (emphasis added). Accordingly, to the extent the Plaintiff seeks to recover more than $100,000.00 from Covington County, her claim is barred.

    **B.    Covington County is Immune From Punitive Damages.**

It is well settled that local governments are immune from punitive damages under § 1983. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Wheeler v. City of Pleasant Grove, 883 F.2d 267, 271 (11th Cir. 1987); Housing Investors, Inc. v. City of Clanton, 68 F. Supp. 2d 1287, 1296 (M.D. Ala. 1999) ("The city will therefore remain as a defendant, but, notably, the city is immune from claims for punitive damages"). Further, state law prohibits punitive damages from being awarded against counties and municipalities. ALA. CODE § 6-11-26 (1975) ("Punitive damages may not be awarded against the State of Alabama or any county or municipality thereof, or any agency thereof . . ."); Harrelson v. Elmore County, 859 F. Supp. 1465, 1469 (M.D. Ala. 1994) (applying statute to strike punitive damages claims made under state law). As a result, the Plaintiff's claims for punitive damages are due to be dismissed.

## CONCLUSION

For the reasons set forth above, Covington County requests that the Court issue an Order dismissing the Plaintiff's claims against it and awarding it costs and attorneys' fees in defending this action.

Respectfully submitted, this 16th day of July, 2007.

          **s/Gary L. Willford, Jr.**
          DARYL L. MASTERS – Bar No. MAS018
          GARY L. WILLFORD, JR. – Bar No. WIL198
          SCOTT W. GOSNELL – Bar No. GOS002
          Attorneys for Defendants
          WEBB & ELEY, P.C.
          7474 Halcyon Pointe Road (36117)
          Post Office Box 240909
          Montgomery, Alabama  36124
          Telephone:  (334) 262-1850
          Fax:  (334) 262-1889
          E-mail:  gwillford@webbeley.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on this the 16th day of July, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Will G. Phillips, Esquire<br>J. David Greene, Esquire<br>Britt V. Bethea, Esquire<br>Greene & Phillips<br>50 N. Florida Street<br>Mobile, AL  36607 | Bert P. Taylor, Esquire<br>Taylor Ritter, P.C.<br>P. O. Box 489<br>Orange Beach, AL  36561 |
| Steven K. Herndon, Esquire<br>Matthew Y. Beam, Esquire<br>Gidiere, Hinton, Herndon & Christman<br>P. O. Box 4190<br>Montgomery, AL  36103 | Alan T. Hargrove, Jr., Esquire<br>Richard Brett Garrett, Esquire<br>Rushton, Stakely, Johnston & Garrett<br>P. O. Box 270<br>Montgomery, AL  36101-0270 |

and by sending via U.S. Mail, postage prepaid, to the following:

| | |
|---|---|
| Oscar Roy Doster, AIS # 177168<br>P. O. Box 150<br>Mt. Meigs, AL  36057 | James Darren Harnage, AIS # 239251<br>P. O. Box 150<br>Mt. Meigs, AL  36057 |

        **s/Gary L. Willford, Jr.**
        OF COUNSEL