IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JENNIE COURTNEY, | * | |
| AS ADMINISTRATRIX OF THE | * | |
| ESTATE OF DENNIS COURTNEY, | * | |
| DECEASED, | * | |
| | * | |
| PLAINTIFF, | * | CIVIL ACTION NO.: |
| | * | 2:06-CV-00600-MHT |
| | * | (Removed from the Circuit Court of |
| v. | * | Covington County, AL; CV-06-110) |
| | * | |
| ANTHONY CLARK, et al. | * | |
| | * | |

### PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANT COVINGTON COUNTY'S MOTION TO DISMISS

COMES NOW the Plaintiff, by and through her attorneys of record, and hereby responds to Defendant Covington County's Motion to Dismiss as follows:

### BACKGROUND

This case arises from federal 42 U.S.C. § 1983 and state law claims. (See generally Doc. 62). On November 3, 2002, Oscar Roy Doster and others escaped from the Covington County jail through the jail's ventilation system. (Id. at ¶ 17). After their escape and before they were re-apprehended, the inmates murdered Paul D. LeMaster. (Covington County Circuit Court CC-2003-162, convicted on September 1, 2006). Once re-apprehended Oscar Roy Doster was placed in the same cell that he previously escaped from (Id. at ¶ 20). On March 31, 2005, Oscar Roy Doster and James Darren Harnage escaped a second time from the Covington County jail. (Id. at ¶ 17). On April 6, 2005, Dennis Courtney was found dead at his secondary residence in Oakwood, Texas. (Id. at ¶

15). His death was ruled a homicide. (Id.). Escaped inmates, Oscar Roy Doster and James Darren Harnage were implicated in the death of Dennis Courtney. (Id. at ¶ 16).

Before the second escape, Defendant Doster received special benefits from the Covington County jail administration. (Doc. 99, Exhibit "A"). Defendant Jerry Edgar allowed Doster's family to drop off supplies and jail contraband for Doster, and then Defendant Edgar, acting as jail administrator, would then carry the bags of contraband into the jail and give the articles to Doster. (Id.). Doster had freedoms in the jail that should not have been allowed. (Id.). He used these freedoms to his advantage. (Id.).

The correctional officers at the Covington County jail knew the history of Doster and understood that Doster was a high escape risk. (Id.). Before the second escape, correctional officer Cliff Portrey observed Doster exercising more, which was his pattern before the first escape. (Id.). Weeks before the second escape, correctional officer Lieutenant Nelson gave an order to move Doster from the previous cell he had escaped from into a different cell. (Id.). Doster refused to leave his old cell and insisted on speaking with Jerry Edgar. (Id.). The order was subsequently overridden by Jerry Edgar. (Id.).

Jail procedures were not followed at the Covington County jail. (Id.). The Covington County correctional officers did not check and secure the jail, and they did not provide a constant patrol of the area. (Id.).

The Plaintiff filed her Second Amended Complaint on January 11, 2007. (Doc. 62). The thirteen count complaint is brought pursuant to 42 U.S.C. § 1983, et seq. and state law to recover civil damages arising from violations of the Fourteenth Amendment and state law which resulted in the death of Dennis Courtney, and it alleges, *inter alia*,

that Covington County engaged in negligent and wanton conduct in the hiring of persons to install and operate the jail's surveillance system, installation of the jail's ventilation system, inspection of the ventilation system, training of jail employees, and failure to warn the public of dangers related to the lack of security in the jail. (Id.).

## ARGUMENT

When reviewing a motion to dismiss, a court must accept as true all the factual allegations in the complaint. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (U.S. 1993); See United States v. Gaubert, 499 U.S. 315, 327, 113 L. Ed. 2d 335, 111 S. Ct. 1267 (1991). This Court previously stated in a case against one of the very same named Defendants "[t]he threshold is 'exceedingly low' for a complaint to survive a motion to dismiss for failure to state a claim. Henderson v. Inabinett, 2006 U.S. Dist. LEXIS 24196 at *4 (M.D. Ala. 2006); Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985). Defendant Covington County's motion to dismiss is due to be denied as a matter of law because the federal and state law actions alleged in the complaint, when accepted as true, are viable claims against this Defendant.

I. **This Court should not dismiss Ms. Courtney's Federal Claims under Rule 4(m) of the Federal Rules of Civil Procedure because the facts of the case warrant and extension of time for service of process.**

Rule 4(m) of the Federal Rules of Civil Procedure states:

If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

3

Rule 4(m) is disjunctive regarding what the Court "shall" do. Specifically, it states the Court "shall dismiss the action… *or* direct that service be effected within a specified time." Fed.R.Civ.P. 4(m) (emphasis added). "Even in the absence of good cause, a district court has the discretion to extend the time for service of process." Horenkamp v. Van Winkle & Co., 402 F.3d 1129, 1132-33 (11th Cir. 2005); see Henderson v. United States, 517 U.S. 654, 663, 116 S. Ct. 1638, 1643, 134 L. Ed. 2d 880 (1996) (recognizing that in the 1993 amendments to the rules, courts have been accorded the discretion to enlarge the 120-day period even in the absence of showing good cause).

The Advisory Note to Rule 4(m) provides some guidance as to what factors may justify the grant of an extension of time absent a showing of good cause. Horenkamp, 402 F.3d at 1132-33. "Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action." Fed.R.Civ.P. 4(m), Advisory Committee Note, 1993 Amendments. Additionally, the Eleventh Circuit has held that a district court must consider whether any other circumstances warrant an extension of time based on the facts of each case. Lepone-Dempsey v. Carroll County Comm'rs, 476 F.3d 1277, 1282 (11th Cir. 2007). Only after considering whether any such factors exist may the district court exercise its discretion and either dismiss the case without prejudice or direct that service be effected within a specified time." Id.

The purpose of the 120 day service period in Rule 4(m) is to promote the accords set forth in Rule 1. Rule 1 of the Federal Rules of Civil Procedure provides that the rules are to "be construed and administered to secure the just, speedy, and inexpensive determination of every action." The Advisory Committee's note to this rule highlights "the affirmative duty of the court to exercise the authority conferred by [the] rules to

4

ensure that civil litigation is resolved not only fairly, but also without undue cost or delay." (1993 Amendments).

Dismissal of Ms. Courtney's complaint based on a failure to comply with the 120 day period in Rule 4(m) would not effect a fair and just determination of her action. In determining the factors which warrant an extension of time in this case, this Court need look no further than the Advisory Committee's non-exhaustive list itself. Mr. Courtney was slain in June of 2005, and Ms. Courtney may have been aware of the second escape (and thus her cause of action in Alabama) by today's date, 2005. If so, she will be time barred from refiling her complaint against Covington County. This is precisely the factor outlined by the Advisory Committee which would warrant an extension of time based on the fair and just determination of every action.

Moreover, an extension of time in this case would not undermine the principles of speed and inexpensive determination set out in Rule 1. Defendant Covington County is represented by the same counsel as the other named Defendants: Anthony Clark, Jerry Edgar, and Walter Inabinett. Their defense counsel was already privy to the facts in the complaint and initial disclosures. The named Defendants, *supra*, have not filed an answer in this case and have not formulated a defense through discovery. The Scheduling Order has been temporarily suspended. (Doc. 92). As such, Defendant Covington County cannot argue that it is any more prejudiced in terms of judicial efficiency and cost now than it was just three months ago, 120 days after Ms. Courtney's Second Amended Complaint was filed. Considering the unjust effect a dismissal may have on Ms. Courtney's action coupled with the lack of prejudice to Defendant

5

Covington County, an abundance of circumstances exist which warrant an extension of time for service[1], and this Court should deny the Defendant's motion to dismiss.

**II.    Ms. Courtney alleged viable causes of action based on violations of Mr. Courtney's federally protected rights and her claims are not due to be dismissed.**

Defendant Covington County asserts that Ms. Courtney cannot meet her first burden under the qualified immunity test. (Doc. 102 at 6). Qualified immunity is defined in Harlow v. Fitzgerald where the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982); Tillman v. Coley, 886 F.2d 317, 319-20 (11th Cir. 1989). "Qualified immunity protects § 1983 defendants from liability for injury arising from discretionary acts as long as the acts do not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known." Lassiter v. Alabama A&M Univ., 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc). "To be clearly established, the contours of the asserted constitutional right 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Anderson, 483 U.S. at 640; Morris v. Jackson, 353 F. Supp. 2d 1199, 1202 (M.D. Ala. 2005).

It is well settled that "no State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amdt. 14, § 1. Washington v. Glucksberg, 521 U.S. 702,   , 138 L. Ed. 2d 772, 117 S. Ct. 2258 (1997) (slip op., at 15);

---

[1] The Defendant was served on June 26, 2007. (Doc. 98). An extension of time to effect service would be retroactive.

6

see also Zinermon v. Burch, 494 U.S. 113, 125, 108 L. Ed. 2d 100, 110 S. Ct. 975 (1990) (noting that substantive due process violations are actionable under § 1983). The substantive due process guarantee protects individuals against government power arbitrarily and oppressively exercised. Daniels v. Williams, 474 U.S. 327, 331 (1986). In determining whether due process rights under the Constitution are violated, the Court has invoked a "shock-the-conscious" test, stating "conduct that 'shocked the conscience' and was so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency' would violate substantive due process. Breithaupt v. Abram, 352 U.S. 432, 435, 1 L. Ed. 2d 448, 77 S. Ct. 408 (1957); County of Sacramento v. Lewis, 523 U.S. 833,

    The actions of Covington County meet this test. Ms. Courtney alleged many causes of action which must be accepted as true for purposes of the pending Motion to Dismiss. Gaubert, 499 U.S. at 327. 847 (U.S. 1998). The Defendant argues that it owed no duty to protect the rights of a resident outside of Alabama. (Doc. 102 at 9-10). However, 42 U.S.C. § 1983 states "Every person who, under color of any statute… subjects, or causes to be subjected, **any** citizen of the United States … to the deprivation of **any** rights…shall be liable to the party injured in an action at law." (emphasis added). Congress did not limit the statute's construction to a locally protected class of persons, but rather extended its protections beyond a state's borders. Moreover, it is incongruent with the plain language of the statute to absolve Covington County of liability simply because of the fortuitous circumstance that its negligence and wantonness caused the death of a non-Alabama resident.

The Defendant correctly points out that Ms. Courtney has alleged substantive due process "special circumstances" claims under the Fourteenth Amendment. (Doc. 102 at 2). Although a non-binding decision for federal claims, Ala. Dep't of Corr. v. Thompson is illustrative of "special circumstances." 855 So. 2d 1016, 1017 (Ala. 2003). In Thompson, the plaintiff sued the defendant warden and correctional officers when she was assaulted and robbed by an escaped inmate. 855 So. 2d at 1017. The Court held that the defendants were not entitled to absolute immunity, but owed the plaintiff no duty absent a special relationship or circumstances. Id., at 1025. However, the Court specifically noted that a special relationship or circumstance would arise when "the defendant 'knew or had reason to know of a probability of conduct by [a third person] that would endanger the plaintiff." Id., at 1022.

In its argument against these claims, the Defendant relies heavily on Jones v. Phyfer. 761 F.2d 642 (11th Cir. 1985); (Doc. 102 at 9). However, Jones is distinguishable from the instant case in that the crimes committed by the juvenile delinquent in Jones were dissimilar. Id., at 643. Even though the victim was the same in Jones, a special relationship or circumstances was lacking because the defendants had no reason to know of a probability that the juvenile would commit the subsequent acts. Unlike the facts of Jones, the identical murders in the present case create a special relationship within the parameters of DeShaney and Lovins and support the viable federal claims as alleged in the complaint. DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 198-99 (1989); Lovins v. Lee, 53 F.3d 1208, 1210 (11th Cir. 1995).

### III. The Defendant's Motion to Dismiss the state law claims against it is due to be denied because the complaint sets forth valid state law causes of action.

As stated earlier, a court must accept as true all the factual allegations in a complaint when reviewing a motion to dismiss. Leatherman, 507 U.S. at 164. Although an Alabama sheriff has control over the inmates of a jail, the employees of a jail, and the jail itself, the county commission is charged with erecting and maintaining jails, and the county also pays the salaries of the sheriff and jail personnel. Turquitt v. Jefferson County, 137 F.3d 1285, 1289-90 (11th Cir. 1998); Ala. Code §§ 14-6-1 (1995), 11-14-10, 11-14-13 (1989), 11-12-15(a)(2), 36-22-16. The Alabama Code provides for the counties to remain informed about conditions within the jails, and the county commission has the authority to inspect the jail without notice to the sheriff. Turquitt, 137 F.3d at 1290; Ala. Code § 11-14-22 (1989).

Ms. Courtney plead allegations against Covington County which identify its involvement in the murder of Mr. Courtney. These counts include allegations relating to the maintenance and inspection of the jail. (Doc. 62 at 5, 7, 9, 10, 11, 14, 16-18). When these allegations are taken as true for purposes of reviewing this motion to dismiss, Covington County's motion regarding the state law claims filed against it is due to be denied.

### CONCLUSION

For the foregoing reasons, Ms. Courtney respectfully requests this Honorable Court to deny Defendant Covington County's Motion to Dismiss.

Respectfully submitted this 9th day of August, 2007.

*/s/ Britt V. Bethea*
WILL G. PHILLIPS (PHI-044)
BRITT V. BETHEA (BET-012)
GREENE & PHILLIPS, L.L.C.
Attorneys for Plaintiff, Jennie Courtney
50 N. Florida Street
Mobile, Alabama 36607
(251) 478-1115 – Telephone
(251) 471-3920 – Facsimile
E-Mail: wgphillips@greenephillips.com
bbethea@greenephillips.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 9th day of August 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Daryl L. Masters, Esq.
Gary L. Willford, Jr., Esq.
Scott W. Gosnell, Esq.
Webb & Eley, P.C.
7474 Halcyon Pointe Road
Montgomery, Alabama 36124

Steven K. Herndon, Esq.
Matthew Y. Beam, Esq.
Gidiere, Hinton, Herndon & Christman
P.O. Box 4190
Montgomery, Alabama 36103

Bert P. Taylor, Esq.
Taylor Ritter, P.C.
P.O. Box 489
Orange Beach, Alabama 36561

Alan T. Hargrove, Jr. Esq.
Richard Brett Garrett, Esq.
Rushton, Stakely, Johnston & Garrett
P.O. Box 270
Montgomery, Alabama 36101-0270

and by sending via U.S. Mail, postage prepaid, to the following:

Oscar Roy Doster, AIS # 177168
P.O. Box 150
Mt. Meigs, Alabama 36057

James Darren Harnage, AIS # 239251
P.O. Box 150
Mt. Meigs, Alabama 36057

/s/ Britt V. Bethea
BRITT V. BETHEA

Alabama Department of
**Public Safety**

**Bureau of Investigation**


EXHIBIT A

PROPERTY OF
ALABAMA BUREAU OF INVESTIGATION

AGENT INVESTIGATIVE SUMMARY
FORM 1 (REV.2-94)

| 1. SUBJECT | 2. FILE NUMBER | |
|---|---|---|
| FINAL SUMMARY  COPY TO Will G. Phillips, Attorney  FURNISHED BY E. Burdick  DATE 12-21-06 | 5C-0719-96-2005 | |
| | 3. DATE OF REPORT  20050907 | 4. SENSITIVITY CODE  A |

5. DETAILS

This investigation was ordered by the ABI Chief, Major KEN HALLFORD, upon a written request by GREG GAMBRIL, Covington County District Attorney, on 05/17/05. Area 5 Commander, Lieutenant RICKY PEAK, was assigned to complete the investigation.

On 03/31/05, three inmates escaped from the Covington County Jail. This final summary will cover the period of time before the escape and different aspects of the environment inside the jail that may have led to the successful escape. The summary will cover procedures, training, employees, control of the facility, and condition of the facility.

During the course of the investigation, it was discovered that ROY DOSTER, one of the three inmates that escaped, was receiving special benefits from the Jail Administration. JERRY EDGAR, who is the Jail Administrator, was providing inmate DOSTER with special benefits: food, tobacco products, extra phone usage, extra family visitation, and art supplies. JERRY EDGAR would allow the DOSTER family to drop off supplies or jail contraband for ROY DOSTER. The Jail Administrator, JERRY EDGAR, would then carry the bags of contraband into the jail and give the articles to ROY DOSTER.

DOSTER was respected by the inmate population, and in many aspects of the day to day operation of the facility, DOSTER ran the jail. During the investigation, the question, "who runs the jail", was asked, and the reply would consistently be, "the inmates run the jail". DOSTER, at times during his incarceration, had freedom that he should not have been allowed. DOSTER was on a paint detail that allowed him to gain access to the different cell blocks within the jail. DOSTER used this freedom to his advantage. DOSTER, at one time, was assigned to cell block "A". DOSTER wanted out of cell block "A" and back into cell block "C", which is the same cell block that he departed from during his first escape. DOSTER became angry when he was not able to use the phone and was placed in cell block "C". During this period, the inmates were not in a lock-down condition, so inmate DOSTER had freedom within the block to move around.

DOSTER used intimidation while he was an inmate at the county jail. The jail population wanted DOSTER to act as their spokesperson. The inmates looked to DOSTER for reasons that are not explained. The inmates knew that DOSTER could make things happen and they wanted him to provide leadership for the jail population.

The Correctional Officers assigned to the Covington County Jail knew the history of ROY DOSTER. Several of the Correctional Officers, when interviewed, stated that they understood that DOSTER was a high risk for an escape attempt. Correctional Officer CLIFF PORTREY stated that he observed DOSTER beginning to exercise more, which was his pattern before his last escape. Several weeks before the escape, Lieutenant DORENE NELSON instructed Correctional Officer BURKETT to move DOSTER from cell block "C" to cell block "A". BURKETT entered the cell block and told DOSTER that he was going to move to a different block. DOSTER told BURKETT that he was not going to move. The Covington County Jail has a no hands on policy regarding officers and inmates. BURKETT notified Lieutenant NELSON that he may have to put his hands on DOSTER. Lieutenant NELSON told him to stand by. Lieutenant NELSON then notified Deputy TIM SNOW to report to the jail and assist in the movement of inmate DOSTER. When Deputy SNOW arrived, he told DOSTER that he needed to gather his clothes together and move to cell block "A". DOSTER complained, but began to gather his belongings. DOSTER stated that he wanted to speak with JERRY EDGAR before he moved. JERRY EDGAR arrived and [as]ked Lieutenant NELSON to step outside the block. Lieutenant NELSON stated that she was told by JERRY [ED]GAR to leave DOSTER in cell block "C". Deputy SNOW heard some of the conversation and was present

| 6. NAME OF AGENT | 7. SIGNATURE OF AGENT | 8. REVIEWED BY | |
|---|---|---|---|
| PEAK, RICKY L | [signature] | [signature] Loyd Arrington | 9. PAGE 1 |
| | | | 10. EXHIBIT NO |

Alabama Department of
**Public Safety**

## Bureau of Investigation

AGENT INVESTIGATIVE SUMMARY
FORM 1 (REV.2-94)

when Lieutenant NELSON came back inside the block and told DOSTER that it had been decided to leave him in cell block "C". Inmate HENRY stated that if DOSTER did not want to leave "C" block, JERRY EDGAR would not make him leave cell block "C".

A few days before the escape, inmate HENRY broke off the stool portion of a small desk in cell block "C". The inmates began to work on the metal portion of the desk and made a flat bar out of the metal. They struck the stool portion against a metal towel rack a half dozen times according to inmate HENRY. Inmate HARNAGE began to work on the chain around the door itself. HARNAGE stopped working on the lock when he met with resistance. HARNAGE then focused his attention on the door itself. HARNAGE worked on the door and finally popped it open, making a loud noise that everyone should have heard. This activity was metal on metal. The inmates had the door open on Monday morning around 2:00 AM, according to inmate DARRELL RAY HENRY. The door remained open with a plastic cover over the area. During the investigation, it was discovered that the inmates placed a pair of orange coveralls over the work area, on the railing, inside of cell block "C". DOSTER spoke with the inmates and told them that they would not be able to work the chain or lock open if the door was ajar at the same time. The decision was made on Tuesday night to close the door and begin to work on the lock once again. Inmate HENRY tried to get the lock off, but couldn't. Inmate JOE GOODMAN told the inmates that he could get the lock off; he beat the lock until it came off. Tuesday night, the door remained open the entire night with no chain around the door. The inmates placed plastic over the door. Wednesday, when the lights went off, HARNAGE went up and opened the door and began to work on the rebarb on the outer portion of the shaft. Two hours later, HARNAGE came back and told the other inmates that he could not get it open. DOSTER went back into the area with HARNAGE, and they beat and kicked for an hour and a half until the rebarb on the ventilation shaft was wide enough for the inmates to get out. The three inmates escaped and dropped to the ground in this order, DOSTER, HARNAGE, and HENRY.

Jail procedures are not followed at the Covington County Jail. Included in the summary of the SOP, it states that only one officer will be located in the POD. All other personnel will walk the floors, holding cells, cell blocks, hallways, and booking areas constantly checking for locked doors and checking the cells during lock-down. A note will be made of any cells that do not lock.

This procedure is not followed at the Covington County Jail. During the escape, the inmates inside cell block "C" had the access door opened for several hours. The Correctional Officers did not check and secure the jail, and they did not provide a constant patrol of the area.

Included in the SOP, under the Procedure Section, it states that each inmate will be searched prior to re-entering the living area of the jail, after being absent for any reason. During the course of the investigation, inmate DOSTER stated that the Covington County Jail has a major methamphetamine problem. DOSTER stated that the drugs are brought into the jail by the work release inmates. He stated that the inmates use V-100 syringes given to them by one of the inmates inside the jail. The inmate received the syringes for a medical condition.

The Sop clearly states, under Release of Inmates, Procedure Number 2, if bonds are presented for the release of an inmate, the jailer on duty will make certain the bonds are valid and acceptable before releasing the inmate on the bond.

On 08/04/05, this procedure was violated when inmate JERRY MILLS was released from the Covington County Jail. Inmate MILLS was placed in the Covington County Jail on drug charges with a hold placed on him for additional charges in Crenshaw County. The bond was for $170,000.00. Mrs. MERLENE MILLS was allowed to bond her son out of jail on a property bond per the instructions of Chief Deputy WALT INABINETT. The investigation determined that Mrs. MILLS owns property valued at $68,200.00.

On 08/08/05, inmate MARTHA WALLACE was released from the Covington County Jail on a property bond per instructions of Sheriff CLARK. Inmate WALLACE was placed in the jail on a domestic violence charge and the

PROPERTY OF
ALABAMA BUREAU OF INVESTIGATION

COPY TO           2

FURNISHED BY _____
DATE _____

| Alabama Department of **Public Safety** | **Bureau of Investigation** | AGENT INVESTIGATIVE SUMMARY FORM 1 (REV.2-94) |
|---|---|---|

bond was set for $3,000.00. Mr. JEFF WALLACE signed the bond. The investigation determined that Mr. WALLACE does not own property in Covington County. The release of the inmate also violated the conditions placed on Mrs. WALLACE, due to the fact that Mr. WALLACE was the victim of the domestic violence charge. The court stated on the conditions of release that the defendant is not to come within 100 yards of the victim.

A copy of this investigative file will be forwarded to the District Attorney of Covington County.

/ews

PROPERTY OF
ALABAMA BUREAU OF INVESTIGATION

COPY TO          2

FURNISHED BY _____
DATE _____