IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JENNIE COURTNEY, ETC., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No.:  2:06-CV-00600-MHT |
| | ) |
| ANTHONY CLARK, et al., | ) |
| | ) |
|     Defendants. | ) |

**DEFENDANT COVINGTON COUNTY, ALABAMA'S
REPLY BRIEF TO PLAINTIFF'S RESPONSE IN OPPOSITION TO ITS MOTION TO
DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

COMES NOW Covington County, Alabama, a Defendant in the above-entitled action, and submits this Reply brief to Plaintiff's Response in Opposition to its Motion to Dismiss.

**INTRODUCTION**

After finally being served 207 days after being brought into the case, Defendant Covington County filed a Motion to Dismiss and supporting brief. (Docs. 101 and 102.)  In the Motion to Dismiss, Covington County argued that the Plaintiff's claims were due to be dismissed in their entirety due to failure of timely service under Rule 4(m) of the Federal Rules of Civil Procedure; that the Plaintiff's federal claim did not state a cognizable Fourteenth Amendment "special relationship" claim; that the facts supporting the Plaintiff's state claims did not fall into any area in which Covington County has responsibility under Alabama law; and that even if a claim could be stated, the Plaintiff's damages were limited to compensatory damages not to exceed $100,000.00.  (See generally Doc. 102.)  In her Response, the Plaintiff takes issue with all of Covington County's arguments except the last one, thereby apparently agreeing that she can recover no more than $100,000.00 from Covington County and that she cannot recover punitive damages from Covington County.  (Doc. 108.)

1

As understood by Covington County, the Plaintiff makes three arguments that she contends makes her claims viable. First, the Plaintiff argues that a retroactive service extension should be granted because the case would be time-barred and no prejudice would result to Covington County. Second, the Plaintiff argues that she has stated a valid "special circumstances" claim.[1] Third, the Plaintiff argues that the Second Amended Complaint contains sufficient allegations to impose liability based upon Covington County's responsibility for erecting and maintaining the jail.

For the reasons set forth below and in Covington County's principal brief, the Plaintiff's claims are due to be dismissed as a matter of law.

**ARGUMENT**

None of the arguments contained in the Plaintiff's Response saves her claims. First, the circumstances of the instant case dictate dismissal under Rule 4(m). Second, the Plaintiff has not pled a cognizable Fourteenth Amendment special circumstances claim. Finally, the factual allegations in the Second Amended Complaint specifically exclude any liability on the part of Covington County under State law.

**I.    THE PLAINTIFF'S FAILURE TO SERVE COVINGTON COUNTY WITHIN 120 DAYS DOES NOT JUSTIFY A RETROACTIVE EXTENSION OF TIME.**

The provisions of Rule 4(m) of the Federal Rules of Civil Procedure are clear. When a complaint is not served upon a named defendant within 120 days of the date of filing, the Court *shall take appropriate action*. The Plaintiff correctly observes that Rule 4(m) provides this Court an alternative to dismissal. Namely, the Court may "direct that service be effected within a specified

---

[1] The Plaintiff cites to a typographical error in Covington County's Memorandum Brief. (Doc. 108 at p. 6, citing Doc. 102 at p. 6.) Specifically, in the final sentence of the introductory paragraph of Section II of the Defendant's Brief states, "the Plaintiff cannot meet her first burden under the qualified immunity test." (Doc. 103, p. 6.) Obviously, Covington County is not entitled to assert the defense of qualified immunity; however, as discussed below, the same cases that were cited in Defendants Clark, Edgar and Inabinett's Motion to Dismiss to show that they did not violate the Plaintiff's constitutional rights support – the first element of the qualified immunity analysis – dismissal of the claims against Covington County as well.

time; ***provided that if the plaintiff shows good cause for the failure***, the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). Here, the Plaintiff has failed to show "good cause" for her failure to serve Covington County within the mandatory time period provided in Rule 4(m). Rather, the Plaintiff asks this Court to simply excuse her failure to serve Covington County until 207 days after Covington County was first named as a Defendant.

### A. The Plaintiff Did Not Have "Good Cause" for Her Failure to Serve Covington County.

The Plaintiff has not shown "good cause" for her failure to serve the Amended Complaint on Covington County. In her Response, the Plaintiff fails to give a reason for her failure to timely serve the Second Amended Complaint. This Court has recognized that good cause can be shown only by "***factors outside a plaintiff's control***, such as sudden illness, natural catastrophe or evasion of service of process. . . ." Zachary v. Thigpen, 895 F. Supp. 1472, 1474 (M.D. Ala. 1995) (quoting Floyd v. United States, 900 F.2d 1045, 1047 (7th Cir. 1990); Varela v. Sanchez Velez, 814 F.2d 821, 823-24 (1st Cir. 1987)) (emphasis added). The Plaintiff has failed to provide this Court with any basis for her failure to effect service on Covington County that would constitute "good cause" as defined by Rule 4(m).

As the District Court for the Southern District of Alabama has observed regarding the "good cause" requirement of Rule 4(m), "Good cause is due to be equated with the concept of 'excusable neglect' outlined in Fed. R. Civ. P. 6(b)(2), 'which requires "a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules."'" Madison v. BP Oil Co., 928 F. Supp. 1132, 1137 (S.D. Ala. 1996) (quoting MCI Telecommunications Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir. 1995) (internal citations omitted). See also, Adams v. AlliedSignal General Aviation Avionics, 74 F.3d 882, 887 (8th Cir. 1996) ("A showing of good cause requires at least 'excusable neglect'-good faith and some reasonable basis for noncompliance with the rules"); Kersh v. Derozier, 851 F.2d 1509, 1512 (5th

3

Cir.1988) ("[G]ood cause ... would appear to require *at least* as much as would be required to show excusable neglect, as to which ***simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice***, and some showing of "good faith on the parties seeking enlargement *and* some reasonable basis for noncompliance within the time specified" is normally required") (some emphasis original, some added); Lowe v. Hart, 157 F.R.D. 550, 553 (M.D. Fla.1994).

Furthermore, as the Eleventh Circuit has held, negligence or inadvertence is insufficient to establish good cause. Lepone-Dempsey v. Carroll County Com'rs, 476 F.3d 1277, 1281 (11th Cir. 2007) ("Good cause exists 'only when some outside factor[,] such as reliance on faulty advice, ***rather than inadvertence or negligence***, prevented service'") (quoting Prisco v. Frank, 929 F.2d 603, 604 (11th Cir. 1991)) (emphasis added). District Courts in the Eleventh Circuit have also found that a showing of "good cause" must be something other than negligence or "indolence." See West v. Lewis Color Lithographers, ___ F. Supp. ___, 2007 WL 2071531, *2 (S.D. Ga. 2007) (observing that "good cause exists only when some outside factor, such as reliance on faulty advice, rather than inadvertence or negligence, prevented service") (quoting Lepone-Dempsey, 476 F.3d at 1281); Jimenez v. Tony B's Painting Tile & Renovations, Inc., ___ F. Supp. 2d ___, 2007 WL 1296050, *2 (M.D. Fla. 2007) ("'Good cause' under Rule 4(m) exists only when some outside factor such as reliance on faulty advice, rather than inadvertence or negligence, prevent service"). Although the Plaintiff has not attempted to show any reason for her failure to comply with the mandates of Rule 4(m), her careless, inadvertent, or negligent failure to do so would not be sufficient to create "good cause."

Here, the only basis for good cause the Plaintiff can produce is the "unjust effect a dismissal may have on [her] action coupled with a lack of prejudice to Defendant Covington County." (Doc. 108 at pp. 5-6.) However, as this Court has held, "'lack of prejudice,' by itself, cannot 'serve as an adequate foundation for a "good cause" determination.'" Zachery, 895 F. Supp. at 1474-75. See also,

4

MCI Telecommunications Corp., 71 F.3d at 1097 ("Although the district court felt that Teleconcepts had not been prejudiced by the late service, absence of prejudice alone can never constitute good cause to excuse late service"); Floyd v. U.S., 900 F.2d 1045, 1048 (7th Cir. 1990) ("Lack of prejudice to the defendant is not a reason why service is not made on time"); Madison, 928 F. Supp. at 1137 ("However, absence of prejudice alone can never constitute good cause to excuse late service").

> **B.    The Running of the Statute of Limitations Does Not Require This Court to Retroactively Extend Time For Service of Process.**

This Court has the discretion to dismiss the Plaintiff's claims against Covington County even where it would effectively bar those claims because the statute of limitations had tolled. See Petrucelli v. Bohringer and Ratzinger, 46 F.3d 1298, 1306 (3d Cir. 1995) ("We emphasize that the running of the statute of limitations does not require the district court to extend time for service of process. Rather, absent a finding of good cause, a district court may in its discretion still dismiss the case, even after considering that the statute of limitations has run and the refiling of an action is barred"); Panaras v. Liquid Carbonic Industries Corp., 94 F.3d 338, 341 (7th Cir. 1996) ("The running of the statute of limitations does not require that a district court extend the time for service of process under the new rule. [citation omitted] Rather, absent a finding of good cause, a district court may in its discretion still dismiss a case even after considering that the statute of limitations has run"); Horenkamp v. Van Winkle And Co., Inc., 402 F.3d 1129, 1133 (11th Cir. 2005) (observing that "the running of the statute of limitations does not require that a district court extend the time for service of process under the new rule [4(m)]") (citing Panaras, 94 F.3d at 341; Petrucelli, 46 F.3d at 1306).

Because the Plaintiff cannot show "good cause" for her failure to comply with the mandates of Rule 4(m), this Court should decline to grant her a retroactive extension of time and dismiss her claims against Covington County.

## II. THE PLAINTIFF'S FEDERAL CLAIM IS DUE TO BE DISMISSED.

As noted previously, Covington County's assertion of qualified immunity was an inadvertent error. However, the same law that supports a finding that the Plaintiff cannot show a deprivation of her deceased's federally protected rights for qualified immunity purposes also demonstrates why the Plaintiff has failed to state a claim against Covington County. First, the Amended Complaint fails to allege any conduct on behalf of Covington County that "shocks the conscience." Moreover, the Plaintiff's Second Amended Complaint does not allege a cognizable "special relationship" claim, sufficient to except the Plaintiff from the general rule that a county owes no duty to protect its citizens from one another. See DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 198-99 (1989).

### A. The Amended Complaint fails to allege any conduct on behalf of Covington County "shocks the conscience."

The Plaintiff states the constitutional standard by which this Court must determine whether Covington County violated the Plaintiff's due process rights is the so-called "shock-the-conscience" test. (Doc. 108, p.7.) The United States Supreme Court last discussed the "shocks-the-conscience" standard in County of Sacramento v. Lewis, 523 U.S. 833 (1998). There, the Court recognized, to be sure, the limits of this constitutional standard:

> We have accordingly rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and have held that ***the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process***.

Id. at 848-849 (citing Daniels v. Williams, 474 U.S. 327 (1986); Davidson v. Cannon, 474 U.S. 344 (1986)). Instead, the Court suggests that the other end of the spectrum of tort liability, "***conduct intended to injure*** in some way unjustifiable by any government interest," is the kind of conduct "most likely to rise to the conscience-shocking level." Id. at 849 (emphasis added).

6

Here, the Plaintiff has failed to allege in the Amended Complaint any conduct whatsoever on behalf of the County that even amounted to mere negligence, much less an intentional tort. In fact, the only count in the Amended Complaint that alleges an intent to injure is Count 13, which provides that "Defendants Oscar Roy Doster and James Darren Harnage *tortiously and intentionally battered and murdered* [] *Dennis Courtney*." (Doc. 62, ¶ 61, emphasis added.) The Amended Complaint references Covington County's "responsib[ility] for the design, engineering and/or construction of the Covington County Jail facility" (Doc. 62, ¶ 22.) and its "responsib[ility] for the installation and proper operation of the surveillance system in the Covington County Jail facility." (Doc. 62, ¶ 23.) All other references to Covington County in the Amended Complaint are in the context of its allegedly negligent or wanton conduct in constructing or maintaining the jail. (Doc. 62, ¶¶ 25, 28, 31, 34, 37, 40, 43, 46, 49, 52, 55, 58.) None of these factual allegations, even if true, asserts any conduct that would have "'shocked the conscience' and was so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency." Breithaupt v. Abram, 352 U.S. 432, 435 (1957).

**B.     The Amended Complaint alleges no facts sufficient to support the existence of a "special relationship between Covington County and the Plaintiff.**

As a general rule, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." DeShaney, 489 U.S. at 196-97. Of course, the Plaintiff has attempted in her Response Brief to squeeze into the narrow exception to that general rule by arguing that Covington County maintained a "special relationship" with her deceased. (Doc. 108, p. 8.) As discussed in Covington County's Brief in Support of its Motion to Dismiss, there can be no "special relationship" where, as here, the government has imposed no restrictions on the citizen or impeded his ability to act in his own interests. Lovins v. Lee, 53 F.3d 1208, 1210 (11th Cir. 1995). In Lovins, the Eleventh Circuit

7

held that "***there is no general substantive due process right to be protected against the release of criminals from confinement, even if that release violates state law***." Id. at 1209.

The Eleventh Circuit reaffirmed this principle of law in Jones v. Phyfer, 761 F.2d 642 (11th Cir. 1985), where it held:

> It is not enough that Brown had broken into plaintiff's house and stolen money on a prior occasion, or that she was instrumental in having Brown convicted and sent to Mt. Meigs for a period of detention. These two things alone are ***not sufficient to establish the required special relationship*** that would impose a duty on the state to protect plaintiff….

Id. at 646-47 (emphasis added). Unlike in Jones, here, the Plaintiff's decedent had no connection whatsoever to Oscar Roy Doster. He was not the victim of one of Doster's prior crimes, nor was he involved in any way in his conviction. In fact, he lived in a different State entirely from Doster and from the Defendant, Covington County, and was apparently murdered in a third state.[2] Of course, Covington County, owes a lesser duty to a person who has had no prior relationship with inmates who lives over 480 miles away, than the Alabama Department of Youth Services owed to the woman who lived in the vicinity of the inmate that burglarized her house and who played an instrumental role in convicting that inmate.

The Plaintiff attempts to distinguish her case from Jones solely on the basis that "the crimes committed by the juvenile delinquent in Jones were dissimilar." (Doc. 108, p. 8.) In other words, the Plaintiff contends, because Oscar Roy Doster committed the same crime both times he escaped, Jones is not instructive because, there, the inmate committed different crimes. However, the Eleventh Circuit gave no indication in Jones that the absence of a "special relationship" was in any way related to the nature of the crimes committed. In fact, the Court cited

---

[2] In her Response Brief, the Plaintiff quotes § 1983 for the proposition that Covington County owed her a duty as a citizen of Louisiana. Section 1983 does not create any substantive rights or duties, but rather creates a private cause of action for the violation of rights and duties protected by the United States Constitution. See 42 U.S.C.A. § 1983; Arnold v. Board of Educ. of Escambia County, Alabama, 880 F.2d 305, 310 (11th Cir. 1989).

8

Wright v. City of Ozark, 715 F.2d 1513 (11th Cir.1983), in support of its conclusion that a "special relationship" was lacking in Jones. In Wright, the plaintiff was *raped in an area where recent prior rapes had occurred*, and the Court nonetheless concluded that "the due process clause of the Constitution does not protect a member of the public at large from the criminal acts of a third person, even if the state was remiss in allowing the third person to be in a position in which he might cause harm to a member of the public." Id. at 1515. Clearly, the absence of a "special relationship" in Jones was not predicated on the dissimilarity of the crimes committed.

Instead, as Wright indicates, the "special relationship" is one "*between the victim and the criminal or between the victim and the state*." Id. at 1515 (emphasis added). The Plaintiff has failed to allege any connection between her deceased and Oscar Roy Doster or Covington County. Indeed, the Plaintiff's deceased lived over 480 miles away from both Doster and Covington County and had no interaction with either. Furthermore, the Plaintiff's deceased was killed in Oakwood, Texas, which is over 633 miles away from Covington County. Because the Plaintiff cannot allege facts to show that she maintained a "special relationship" with either Oscar Roy Doster or Covington County, the Plaintiff cannot establish that Covington County owed her any duty. And, because "'*there is no constitutional right to be protected by the state against being murdered by criminals or madmen*,'" the Plaintiff has failed to state a constitutional claim. Jones, 761 F.2d at 644 (quoting Bowers v. DeVito, M.D., 686 F.2d 616, 618 (7th Cir. 1982)) (emphasis added).

## II. COVINGTON COUNTY IS ENTITLED TO A DISMISSAL OF ALL OF THE PLAINTIFF'S STATE LAW CLAIMS, AS A MATTER OF LAW, BECAUSE IT HAS NO RESPONSIBILITY UNDER ALABAMA LAW FOR THE OPERATIONS OF THE COVINGTON COUNTY JAIL.

The Plaintiff's response to Covington County's arguments regarding her state law claims is suspiciously short. Essentially, her entire argument is that the allegations on pages 5, 7, 9-11, 14, and 16-18 of the Second Amended Complaint, when taken as true, are sufficient to state a

claim within the extremely narrow scope of Covington County's responsibilities for erecting and maintaining a jail.

    A.    **The allegations of the Amended Complaint are insufficient to state any state law claims against Covington County.**

As discussed above, all references to Covington County in the Amended Complaint are in the context of its allegedly negligent or wanton conduct in constructing or maintaining the jail. (Doc. 62, ¶¶ 25, 28, 31, 34, 37, 40, 43, 46, 49, 52, 55, 58.). However, as the Amended Complaint clearly states, "Defendants, Oscar Roy Doster, James Darren Harnage and others were ***allowed to escape from the Covington County, Alabama, jail by the Sheriff and his employees***." (Doc. 62, ¶ 17, emphasis added.) That allocation of responsibility for Doster's escape in the Amended Complaint – if any actually exists – is entirely consistent with the Eleventh Circuit's holding in Turquitt v. Jefferson County, that "*the sheriff has control over the inmates of the jail, the employees of the jail, and the jail itself*," and under "*§ 14-6-1* [Ala. Code, 1975] … *'the sheriff's authority over the jail is totally independent of the [county commission].'*" 137 F.3d 1285, 1288-91 (11th Cir. 1998) (quoting King v. Colbert County, 620 So. 2d 623, 625 (Ala. 1993)) (emphasis added).

However, the Plaintiff declined to address in her Response Brief the Eleventh Circuit's holding in Turquitt that the Sheriff and his staff are responsible for the control and supervision of the inmates and the jail. Instead, the Plaintiff summarily concludes that the allegations in the Amended Complaint, when taken as true, state a claim against Covington County for failure to maintain and inspect the jail. (Doc. 108, p. 9.) Indeed, Turquitt addressed the county commission's "authority" to inspect the jail, as opposed to any obligation to do so, but only in the context of "the counties' limited role in ***building and funding the jails*** [which] do[es] not imply or impart any control over the jails' operation." Turquitt, 137 F.3d at1290 (emphasis added). As Turquitt

10

instructs, the responsibility for the control and supervision of inmates and the jail falls squarely on the sheriff and his staff, imposing on the county only the legislative functions of appropriating funds. As in Turquitt, the Plaintiff did not, in the Amended Complaint, "allude to any failure on the County's part to appropriate adequate funds," and so all claims against Covington County must fail. Id. at 1290. Because Covington County may not be held vicariously liable under § 1983 for injuries arising from the sheriff's management of the jail, Id. at 1286; McMillian v. Monroe County, 520 U.S. 781, 788 (1997), the Plaintiff's state law claims against Covington County must be dismissed.

> **B.    Covington County cannot be held liable under a theory of *respondeat superior*.**

Under Alabama law, a sheriff is not treated as an "employee of the county for purposes of imposing liability on the county under a theory of *respondeat superior*." Parker v. Amerson, 519 So. 2d 442 (Ala. 1987); see also King, 620 So. 2d at 625 ("The sheriff's authority over the jail is totally independent of the Colbert County Commission. . . . Colbert County itself cannot be held vicariously liable for his actions or inaction"); Hereford v. Jefferson County, 586 So. 2d 209, 210 (Ala. 1991). Because she did not address the issue in her Response Brief, the Plaintiff apparently concedes that Covington County may not be held liable under a theory of *respondeat superior*. See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (finding that a party who fails to address an issue has waived it); Lyes v. City of Riviera Beach, Fla., 126 F.3d 1380, 1388 (11th Cir. 1997) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments. . . .").

To the extent the Plaintiff's claims are based upon vicarious liability arising out of the actions of the Sheriff and his employees, Covington County is entitled to have them dismissed.

## CONCLUSION

For the reasons set forth above, Covington County requests that the Court issue an Order dismissing the Plaintiff's claims against it and awarding it costs and attorneys' fees in defending this action.

Respectfully submitted this 17th day of August , 2007.

        **s/Joseph L. Hubbard, Jr.**
DARYL L. MASTERS Bar Number:  MAS018
GARY L. WILLFORD, JR. Bar Number:  WIL198
JOSEPH L. HUBBARD, JR. Bar Number: HUB015
Attorneys for Defendant
WEBB & ELEY, P.C.
7475 Halcyon Pointe Road
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  gwillford@webbeley.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the **17th** day of **August, 2007**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  **Will G. Phillips, Esquire, J. David Greene, Esquire, Britt V. Bethea, Esquire, Bert P. Taylor, Esquire, Steven K. Herndon, Esquire, Matthew Y. Beam, Esquire, Alan T. Hargrove, Jr., Esquire, and Richard Brett Garrett, Esquire,** and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Oscar Roy Doster, AIS # 177168
P. O. Box 150
Mt. Meigs, AL  36057

James Darren Harnage, AIS # 239251
P. O. Box 150
Mt. Meigs, AL  36057

        **s/Joseph L. Hubbard, Jr.**
        OF COUNSEL